```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA, . CRIMINAL NO. 1:15-cr-10271-WGY-1
      Plaintiff           .
                          . BOSTON, MASSACHUSETTS
            v.            . MARCH 7, 2016
                          .
ALEX LEVIN,               .
      Defendant           .
. . . . . . . . . . . . . .

                 TRANSCRIPT OF DETENTION HEARING
             BEFORE THE HONORABLE MARIANNE B. BOWLER
                  UNITED STATES MAGISTRATE JUDGE

    APPEARANCES:
    For the Government:   UNITED STATES ATTORNEY'S OFFICE
                          BY: David G. Tobin, AUSA
                          One Courthouse Way
                          Suite 9200
                          Boston, MA 02210
                          617-748-3965
                          david.tobin@usdoj.gov

                          UNITED STATES ATTORNEY'S OFFICE
                          BY: Jordi deLlano, AUSA
                          One Courthouse Way
                          Suite 9200
                          Boston, MA 02210
                          617-748-3155
                          jordi.de.llano@usdoj.gov

    For the Defendant:    J.W. Carney, Jr., Esq.
                          J.W. Carney, Jr. & Associates
                          20 Park Plaza
                          Suite 1405
                          Boston, MA  02116
                          617-933-0350
                          jcarney@carneydefense.com

                          Samir Zaganjori, Esq.
                          J.W. Carney, Jr. & Associates
                          20 Park Plaza
                          Suite 1405
                          Boston, MA  02116
                          617-933-0350
                          szaganjori@carneydefense.com
```

Court Reporter:

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

*Judy Bond*
**Certified Federal Court Transcriber**
**508.984.7003**

COURT CALLED INTO SESSION
(4:02:05 P.M.)

THE CLERK: The United States District Court for the District of Massachusetts is now in session. The Honorable Marianne B. Bowler presiding, today is Monday, March 7, 2016, in the case of U.S. v. Levin, Criminal Action 15-10271, will now be heard.

Will counsel please identify themselves for the record.

MR. TOBIN: Good afternoon, Your Honor. David Tobin and Jordi deLlano on behalf of the United States.

THE COURT: Thank you.

MR. deLLANO: Good afternoon, Your Honor.

THE COURT: Good afternoon.

MR. CARNEY: J.W. Carney, Junior. With me is Attorney Sam Zaganjori. Good afternoon, Your Honor.

THE COURT: Good afternoon.

MR. CARNEY: And the defendant is present --

THE COURT: So noted --

MR. CARNEY: -- at counsel table.

THE COURT: -- for the record.

Well, Mr. Carney, I'll hear you on Docket Entry 33, which is defendant's second motion for release.

MR. CARNEY: Thank you, Your Honor. I first want to extend my sincere gratitude to the Court for being able

1 to reschedule this hearing so it could occur on the same day
2 that there was a status hearing before Judge Young.
3       THE COURT:  I was going to ask you.  It was just a
4 status hearing?  There is a motion to suppress, but it was
5 not heard at this time, or?
6       MR. CARNEY:  That's correct, Your Honor.
7       THE COURT:  All right.
8       MR. CARNEY:  The Government needs additional time
9 to respond to it.
10       Judge Young has scheduled oral argument on the
11 motion for I believe March 25.  He also has rescheduled the
12 trial date to June 13.
13       THE COURT:  All right.  3/25 for the motion to
14 suppress; right?
15       MR. CARNEY:  And I can represent to the Court that
16 no matter what the outcome of the motion to suppress hearing
17 would be, the defendant has made it clear that he intends to
18 proceed to trial on this case.
19       THE COURT:  All right.  So noted.  And therefore,
20 Docket Entry 46 is moot, motion for expedited hearing; in
21 that, you're having a hearing now.
22       MR. CARNEY:  Yes.  And I'm so grateful to Your
23 Honor.
24       Well, actually --
25       Yes, I am so grateful to Your Honor for scheduling

it.

THE COURT: I was out of the country. The clerk contacted me, set it up immediately.

MR. CARNEY: It was terrific, and it must be wonderful to have --

THE COURT: The best clerk in the courthouse?

MR. CARNEY: Right out of my mouth.

And I'd like to address the Court briefly orally.

THE COURT: You've read everything, and you have Ms. Rivera's reports?

MR. CARNEY: Yes, I have, Your Honor.

The first item I want to address is whether it is necessary or even indicated that if the defendant is to be released, he should have a third-party custodian.

I have had dozens of cases since I've been a member of this bar which I joined in 1979 where there has been a third-party custodian, but never in a situation like this.

As Your Honor knows, the defendant is 49 years old. He is a United States citizen. He has no prior criminal record whatsoever. The crime is not a crime of violence. The Government has sought an indictment solely for possession.

The last case I had in this court of this nature a person had possession of more than 36,000 items. A

1 possession of one is serious --

2          THE COURT: Items or images?

3          MR. CARNEY: Images. 26,000. And in fact, that
4 case went to court -- I mean, went to trial before Judge
5 Young.

6          In my opening statement I admitted the possession
7 of those items, but contested the production or making of
8 child pornography, because he was charged with those four
9 counts. And the defendant was acquitted of those four
10 counts.

11         But in a situation like this where it's simple
12 possession, albeit a serious crime, but simple possession,
13 not transportation, meaning sending images anywhere, not
14 production, meaning creating images, and I believe the
15 number of items actually possessed in terms of photo or
16 video is under ten, I'm not minimizing it but making a
17 comparison to what other cases often reflect.

18         My client has lived in Massachusetts for decades.
19 He graduated from high school in Worcester in 1984. Then
20 got a bachelor of science degree and following that a
21 master's degree.

22         Then he became employed in the technical field,
23 and he has consistently stayed employed as a IT specialist,
24 moving from company to company as the work became more
25 attractive for him or the job opportunities became more

1 lucrative.

2         He was married and is currently divorced.  But as
3 a divorced father, he is a dedicated parent to his daughter
4 who is nine years old.

5         She lives with the mom, while prior to this case
6 he would have visitation at his apartment every other
7 weekend and would also have visitation I believe it was on
8 every Wednesday.  His ex-wife has said she does not
9 interpose any objection to the defendant being released.

10         This has probably been the most traumatic part of
11 his being in custody, because his daughter is struggling not
12 being able to see her father in the manner that she did
13 before.

14         He's got support of his family, a brother who
15 lives locally who owns a jewelry store that's been very
16 supportive of him, as has the defendant's other brother.

17         In a situation like this, I submit that Alex Levin
18 does not present a realistic prospect of flight.  He'd be
19 abandoning the daughter he adores.

20         The Government has proposed a resolution.  It's
21 not likely to be accepted, but the resolution -- well, I'll
22 call it what it is.  It's a very fair proposed resolution of
23 the case.  I don't often say that in this building, but I
24 can say that in this case.  And I just indicate that to Your
25 Honor, because even with the fairness of the position that

1 the Government has taken, my client intends to go to trial
2 for the sole issue:  Did he knowingly download these images
3 to his computer?  That will be the issue at trial.  And I
4 say this to show that his commitment is to go to trial as
5 opposed to accepting the government's proposal and being
6 home in a relatively short time.
7          So I submit he doesn't present a risk of flight.
8          So then it comes down to danger to the community.
9 Does he need a custodian to provide safety to the community?
10 I think the biggest issue would be whether he could have
11 access to the Internet whether on a smartphone or a
12 computer.
13          And the person I'm proposing primarily as the
14 individual with whom my client would live is his brother.
15 He's made it clear he will get rid of any computer access in
16 the home.  He will not allow smartphones to be present in
17 the home.
18          My client would be under GPS monitoring device, so
19 that one could be assured where he is at all times.
20          There's no suggestion of any threat ever made to
21 any individual in the community.
22          The fact that the defendant's brother has a
23 daughter living in the house is not an issue given that she
24 is 21 years old --
25          THE COURT:  But it's a two-bedroom apartment.

1          MR. CARNEY:  Yes.
2          THE COURT:  Where is he going to live?
3          MR. CARNEY:  He and his brother are going to stay
4  in one room is what I'm told, and the mother and daughter
5  would stay in the other room.  They're willing to do that.
6  It's an accommodation that one would only make for a family
7  member that you love and are supportive of.
8          And so under those circumstances and whatever
9  other conditions the Court wants to set such as an unsecured
10 bond --
11         I know initially in the probation report I notice
12 that after a very --
13         THE COURT:  Does the brother's wife work?
14         THE DEFENDANT:  She does.
15         THE COURT:  No.  You speak to your lawyer, not to
16 me.
17         MR. CARNEY:  She owns a hair salon, Your Honor.
18         THE COURT:  And where is that?
19         MR. CARNEY:  In Canton.
20         And in the report dated in August the probation
21 officer listed 17 conditions of release, all of them being
22 acceptable to the defendant.
23         And if Your Honor adopted them or wanted to add
24 others, that's fine as well.
25         I'm looking at page 4 of that report which states,

1  "To reasonably assure the defendant's appearance and safety
2  of the community, I respectfully recommend that the
3  defendant be released on a $10,000 unsecured bond with the
4  following conditions."
5          So what I submit it comes down to in this case,
6  does a defendant fitting this profile need a third-party
7  custodian?
8          He doesn't have a drug problem, doesn't have an
9  alcohol problem --
10         THE COURT:  Well, he was less than candid about
11 his use of drugs.
12         MR. CARNEY:  I thought that was a suggestion made
13 rather than a statement.  He indicated he uses marijuana
14 once -- on average once a month.  A bong was present in the
15 apartment.
16         I think that given the law that is proposed for
17 later this year and is up for vote by the citizens of
18 Massachusetts, I think a bong will become a more frequent
19 item observed in the living rooms of the Commonwealth.
20         THE COURT:  Well, the law has not been passed yet.
21         MR. CARNEY:  I understand.  It is, though, not a
22 crime to have a bong or even to use marijuana; but, of
23 course, none of that would be present and available.
24         The defendant would submit to multiple drug tests
25 per week if the Court wished, multiple random Breathalyzers

to make sure he's not doing alcohol.

A land line will be installed at the apartment so that he can be monitored by a GPS if the Court were to set a curfew so that he had to be in the house during a certain period of time.

He knows the stakes. He knows he has to be like Caesar's wife in terms of staying away from the Internet, and he knows what the consequences would be.

But under the circumstances since all the other conditions are enough to assure that he won't be a risk of flight and a danger to the community, I'm respectfully asking the Court to reconsider whether this man, this profile, requires a third-party custodian.

Thank you.

THE COURT: Mr. Tobin, do you wish to respond?

MR. TOBIN: Briefly, Your Honor, yes. Thank you. This Court has already given, first of all correctly, due consideration to the defendant's brother as a potential third-party custodian. And while I don't --

My understanding at least from the comments of the Court in the previous hearing was that there was a genuine concern about the brother's criminal record. I understand, as the judge understands, of course, Your Honor, that his case was *nolle prossed*, but the case started in the district court. It was indicted. And you'll recall that there were

1 sexual offenses against his daughter.  And in fairness to
2 Mr. Carney, I think he indicated that that daughter was
3 estranged from the family and such, but I think the Court
4 was concerned about that.  I was certainly as a
5 representative of the United States very concerned about
6 that.
7          So I do to some extent --
8          THE COURT:  This is not the same daughter that's
9 living in the apartment?
10         MR. TOBIN:  No.  I believe there were two
11 daughters.  One is estranged who believes or had maintained
12 that her father had sexually raped her and molested her.
13         But again, I understand that this is essentially
14 the proverbial second bite of the apple.
15         And maybe I was mistaken.  I thought we were
16 essentially here to talk primarily about the other potential
17 third-party custodian who was recently vetted by probation,
18 the elderly individual who Ms. Rivera, who's very good at
19 what she does, determined is not an appropriate third-party
20 custodian.
21         Ms. Rivera has also determined, and I think
22 correctly so, that the brother is not an appropriate
23 third-party custodian.
24         And I understand that Mr. Carney has looked now
25 for some weeks or -- or certainly weeks for a suitable

1  third-party custodian.  He hasn't been able to find one.
2          His argument today and from the beginning -- and
3  again, in fairness to Mr. Carney -- is that one is not
4  needed, and we just have to part company there.  We just
5  have to disagree.
6          We, the United States, on whose behalf I speak, I
7  believe that a third-party custodian is very important in
8  cases like this.
9          And I don't want to rehash my entire previous
10 argument, so I won't, but the high points, if you will, or
11 at least the salient points of that are that this is a crime
12 that can victimize children, and it can be done anytime or
13 anywhere there's a portal to the Internet.
14         And it is extremely --
15         It's virtually impossible to keep an individual
16 from getting access to the Internet, and it's he certainly
17 impossible when the third-party custodian is an
18 inappropriate person.
19         So that's why he needs a third-party custodian.
20         And as I've said from the beginning, at this point
21 the defense has provided nothing that gives the Government
22 any reassurance that society or children would be protected
23 or that he wouldn't be a flight risk.
24         I know he has a child.  I know that he has a
25 significant other, a young lady who I believe is in the room

today.  Of course, the government's position, albeit it's innocent or he's not guilty until proven guilty, the government's position and the grand jury did find probable cause that despite a daughter, despite a girlfriend, despite everything that Mr. Carney says, there is evidence sufficient for an indictment that he victimized children.

And I'll make one final point, and then I promise I'll sit down.

I respect Mr. Carney's position, and I understand his position when he says that this is not a crime of violence.  Whether or not it's a crime of violence or not is perhaps an open question.  I know that for certain purposes, I believe that these kinds of cases are or can be considered crimes of violence.

But, Judge, even if a judge feels as though this is not a crime of violence, it is a very troubling crime. The gravamen of this is a crime of violence, because children being exploited, particularly children being raped and penetrated, is a horrible, heinous, violent act.  This defendant may not be engaging in horrible, heinous physical acts against children, but what he's doing, nonetheless, victimizes and hurts children.

And you need only look at the victims' statements, the victims' statements of children.  Not the statements that pertain to their sexual assaults at the hands of

1 rapists, but their statements in dealing with individuals
2 who have gotten some form of sexual gratification by looking
3 at their torture.
4     So, you know, crime of violence, I think it is.
5 But even if the Court decides that it's not, it's a very
6 severe crime where children are at risk.  They have to be
7 protected.
8     And quite simply, despite the best efforts of the
9 defense, and they are huge efforts, and the defense attorney
10 should be commended for the work he has done coming back
11 again and again, it's just there's not been anything put
12 forward that could assure the protection of society or that
13 this defendant will be available to come back.
14     So I would ask you not to do it.
15     THE COURT:  Well, Mr. Carney, I've reviewed
16 everything, and I have to say at this time the second motion
17 for release, Docket Entry 33 is denied without prejudice to
18 renewal if you find an appropriate situation and a
19 third-party custodian.
20     As to the brother's apartment, the initial report
21 indicated to me that there were clear evidence of minors
22 residing in the apartment complex in the form of bicycles
23 and two-wheel tricycles for children located on the first
24 floor balcony in front of the apartment.
25     Okay.  I can't put him in a complex with children.

Sorry.

As to the second proposed custodian who says he's in Vermont 30 to 40 -- or New Hampshire I think 30 to 40 percent of the time, he's not around.

This is not a person who knows how to use a computer casually; this is an IT expert.

So I need to have somebody who can supervise him and say there is no access.

If you can come back and find -- show me a place where he can be supervised by somebody in a home where there are no children in close proximity, I will consider it.

So it's not denied -- it's denied without prejudice.

In the interim, the defendant is remanded to the custody of the United States Marshal Service.

MR. CARNEY: Thank you, Your Honor.

THE COURT: And Ms. Rivera is available to assist if you have a further proposal.

MR. TOBIN: Thank you, Your Honor.

MR. ZAGANJORI: Thank you, Your Honor.

MR. deLLANO: Thank you, Your Honor.

THE COURT: And I will note that if the motion to suppress is granted, that you might want to come back.

MR. CARNEY: Thank you, Your Honor.

THE COURT: All right.

1       (Court adjourned at 4:22:43 p.m.)

*Judy Bond*
**Certified Federal Court Transcriber**
**508.984.7003**

18

1                        CERTIFICATION

2      I, Judy Bond Gonsalves, a court approved transcriber,

3  certify that the foregoing is a correct transcript from the

4  official electronic sound recording of the proceedings in

5  the above-entitled matter.

6

7

8  ___*Bond*_____  March 12, 2016
   Judy Bond

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Judy Bond*
**Certified Federal Court Transcriber**
**508.984.7003**