UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                  )
UNITED STATES OF AMERICA,         )
                                  )
                                  )
                                  )
                                  )          CRIMINAL ACTION
            v.                    )          NO. 15-10271-WGY
                                  )
ALEX LEVIN,                       )
                                  )
                  Defendant.      )
_____ )

YOUNG, D.J.                                        April 20, 2016

**MEMORANDUM & ORDER**

## I.    INTRODUCTION

Alex Levin is charged with possession of child pornography. Compl. 1, ECF No. 1.  The government obtained evidence of Levin's alleged crime in three steps.  First, it seized control of a website that distributed the illicit material at issue ("Website A").  Next, it obtained a series of search warrants that allowed the government to identify individual users who were accessing content on Website A.  One of these warrants involved the deployment of a Network Investigative Technique (the "NIT Warrant").  Finally, the government searched[1] the computers of certain of these individuals, including Levin.

_____

[1] The government has waived any argument that its investigative conduct here did not amount to a search by failing to raise this argument in its memorandum.  The Court therefore assumes that Levin had a reasonable expectation of privacy as to

Levin has moved to suppress the evidence obtained as a result of the issuance of the NIT Warrant, arguing that the NIT Warrant is void for want of jurisdiction under the Federal Magistrates Act, 28 U.S.C. § 636(a), and additionally that it violated Federal Rule of Criminal Procedure 41(b).  Def.'s Mot. Suppress Evidence ("Def.'s Mot.") 5-6, ECF No. 44.  The government contends that the NIT Warrant was valid and that, in any event, suppression is not an appropriate remedy on these facts.  Gov't's Resp. Def.'s Mot. Suppress ("Gov't's Resp.") 1, ECF No. 60.

## II.   FACTUAL BACKGROUND

This case involves a far-reaching and highly publicized investigation conducted by the Federal Bureau of Investigation in early 2015 to police child pornography.[2]  The investigation focused on Website A, which was accessible to users only through

_____

the information obtained through the execution of the various warrants.

[2] For coverage of this investigation, see, for example, Ellen Nakashima, This is How the Government is Catching People Who Use Child Porn Sites, Wash. Post, Jan 21, 2016, https://www.washingtonpost.com/world/national-security/how-the-government-is-using-malware-to-ensnare-child-porn-users/2016/01/21/fb8ab5f8-bec0-11e5-83d4-42e3bceea902_story.html; Mary-Ann Russon, FBI Crack Tor and Catch 1,500 Visitors to Biggest Child Pornography Website on the Dark Web, Int'l Bus. Times, Jan. 6, 2016, http://www.ibtimes.co.uk/fbi-crack-tor-catch-1500-visitors-biggest-child-pornography-website-dark-web-1536417.

the "Tor" network -- software designed to preserve users'
anonymity by masking their IP addresses.[3]  See Def.'s Mot., Ex.
3, Aff. Supp. Application Search Warrant ("Aff. Supp. NIT
Warrant") 10-12, ECF No. 44-3.

As an initial step in their investigation, FBI agents
seized control of Website A in February 2015.  See id. at 21-23.
Rather than immediately shutting it down, agents opted to run
the site out of a government facility in the Eastern District of
Virginia for two weeks in order to identify -- and ultimately,
to prosecute -- users of Website A.  See id. at 23.  To do this

---

[3] "Tor," which stands for "The Onion Router," is "the main
browser people use to access" the "Darknet" -- "a specific part
of th[e] hidden Web where you can operate in total anonymity."
Going Dark: The Internet Behind the Internet, Nat'l Pub. Radio,
May 25, 2014, http://www.npr.org/sections/alltechconsidered/
2014/05/25/315821415/going-dark-the-internet-behind-the-
internet.  Tor itself is lawful and has various legitimate uses.
See id.  Indeed, it was developed by the United States Navy,
which continues to use it "as a means of communicating with
spies and informants[.]"  John Lanchester, When Bitcoin Grows
Up, 28 London R. Books No. 8, http://www.lrb.co.uk/v38/n08/john-
lanchester/when-bitcoin-grows-up.  Tor has, however, produced
difficulties for law enforcement officials, "especially those
pursuing child pornography, Internet fraud and black markets,"
since it allows criminals to evade detection.  Martin Kaste,
When a Dark Web Volunteer Gets Raided by the Police, Nat'l Pub.
Radio, April 4, 2016, http://www.npr.org/sections/alltechconside
red/2016/04/04/4729 92023/when-a-dark-web-volunteer-gets-raided-
by-the-police; see also Lanchester, supra (describing Tor as
"the single most effective web tool for terrorists, criminals
and paedos" and noting that it "gives anonymity and geographical
unlocatability to all its users").  At the same time, its legal
users have raised concerns about the privacy implications of
government "sting" operations on the Tor network.  See Kaste,
supra.

required the deployment of certain investigative tools.  See id. at 23-24.

To that end, the government sought and obtained a series of warrants.  First, on February 20, 2015, the government procured an order pursuant to Title III from a district judge in the Eastern District of Virginia permitting the government to intercept communications between Website A users.  Def.'s Mot., Ex. 2 ("Title III Warrant"), ECF No. 44-2.  Second, also on that date, the government obtained a warrant from a magistrate judge in the Eastern District of Virginia to implement a Network Investigative Technique ("NIT") that would allow the government covertly to transmit computer code to Website A users.[4]  NIT Warrant, ECF No. 44-3.  This computer code then generated a communication from those users' computers to the government-operated server containing various identifying information, including those users' IP addresses.[5]  See Aff. Supp. NIT Warrant 24-26.

---

[4] For a discussion of the government's recent use of these types of warrants, see Brian L. Owsley, Beware of Government Agents Bearing Trojan Horses, 48 Akron L. Rev. 315 (2015).

[5] The affidavit the government submitted in support of its application for the NIT Warrant describes this process:

In the normal course of operation, websites send content to visitors.  A user's computer downloads that content and uses it to display web pages on the user's computer.  Under the NIT authorized by this warrant,

[4]

Through the use of the NIT, government agents determined
that a Website A user called "Manakaralupa" had accessed several
images of child pornography in early March 2015, and they traced
the IP address of that user to Levin's home address in Norwood,
Massachusetts.  Def.'s Mot., Ex. 1 ("Residential Warrant"), Aff.
Supp. Application for Search Warrant ("Aff. Supp. Residential

---

[Website A], which will be located . . . in the
Eastern District of Virginia, would augment that
content with additional computer instructions.  When a
user's computer successfully downloads those
instructions from [Website A] . . . the instructions,
which comprise the NIT, are designed to cause the
user's 'activating' computer to transmit certain
information to a computer controlled by or known to
the government.

Aff. Supp. NIT Warrant 24.  The particular information seized
pursuant to the NIT Warrant included:

1. the 'activating' computer's actual IP address, and
the date and time that the NIT determines what that IP
address is;
2. a unique identifier generated by the NIT (e.g., a
series of numbers, letters, and/or special characters)
to distinguish data from that of other 'activating'
computers, that will be sent with and collected by the
NIT;
3. the type of operating system running on the
computer, including type (e.g., Windows), version
(e.g., Windows 7), and architecture (e.g., x 86);
4. information about whether the NIT has already been
delivered to the 'activating' computer;
5. the 'activating' computer's Host Name;
6. the 'activating' computer's active operating system
username; and
7. the 'activating' computer's media access control
('MAC') address[.]

NIT Warrant, Attach. B (Information to be Seized).

[5]

Warrant") 11-12, ECF No. 44-1.  On August 11, 2015, law
enforcement officials obtained a third and final warrant (the
"Residential Warrant") from Magistrate Judge Bowler in this
District to search Levin's home.  See Residential Warrant.
Agents executed the Residential Warrant on August 12, 2015, and
in their search of Levin's computer, identified eight media
files allegedly containing child pornography.  See Compl., Ex.
2, Aff. Supp. Application Criminal Compl. ¶ 7, ECF No. 1-2.

Levin was subsequently indicted on one count of possession
of child pornography, 18 U.S.C. § 2252A(a)(5)(B).  Indictment,
ECF No. 8.  He has since moved to suppress all evidence seized
pursuant to the NIT Warrant and the Residential Warrant.[6]  Def.'s
Mot.  After holding a hearing on March 25, 2016, the Court took
Levin's motion under advisement.  See Elec. Clerk's Notes, ECF
No. 62.

## III. ANALYSIS

In support of his motion to suppress, Levin contends that
the NIT Warrant violated the territorial restrictions on the
issuing magistrate judge's authority,[7] and further that the

---

[6] The government does not contest Levin's argument that
absent the NIT Warrant, it would not have had probable cause to
support its Residential Warrant application, see Def.'s Mot. 14.
For the sake of simplicity, the Court uses the phrase "evidence
seized pursuant to the NIT Warrant" to include evidence seized
pursuant to the Residential Warrant because all of that evidence
is derivative of the NIT Warrant.

evidence obtained pursuant to the NIT Warrant must be suppressed in light of law enforcement agents' deliberate disregard for the applicable rules and the prejudice Levin suffered as a consequence.  <u>See</u> Def.'s Mot. 6-7.  The government refutes each of these arguments, and additionally argues that the good-faith exception to the exclusionary rule renders suppression inappropriate.  <u>See</u> Gov't's Resp. 1.

### A.   Magistrate Judge's Authority Under the Federal Magistrates Act and Rule 41(b)

Levin argues that the issuance of the NIT Warrant ran afoul of both Section 636(a) of the Federal Magistrates Act and Rule 41(b) of the Federal Rules of Criminal Procedure.  <u>See</u> Def.'s Mot. 5-7, 12.  The conduct underlying each of these alleged violations is identical: the magistrate judge's issuance of a warrant to search property located outside of her judicial

---

[7] A more precise characterization of Levin's challenge would be that the magistrate judge who issued the NIT Warrant had no authority to do so under the relevant statutory framework and federal rules -- not that the issuance of the warrant "violated" these provisions, by, for example, failing to comply with procedural requirements.  In the Court's view, this distinction is meaningful, <u>see</u> <u>infra</u> Part III(B)(1), though it is one that neither the parties nor other courts evaluating similar challenges seem to appreciate, <u>see, e.g.</u>, <u>United States</u> v. <u>Michaud</u>, No. 3:15-cr-05351-RJB, 2016 WL 337263 at *5-*7 (W.D. Wash. Jan. 28, 2016) (discussing whether the NIT Warrant "violates" Federal Rule of Criminal Procedure 41(b)).  In the interest of consistency with the parties' briefings and prior caselaw, however, the Court continues the tradition of referring to actions by a magistrate judge that fall outside the scope of her authority as "violations" of the provisions that confer such authority.

district.  See id.  Moreover, because Section 636(a) expressly incorporates any authorities granted to magistrate judges by the Federal Rules of Criminal Procedure, see infra Part III(A)(1), the Court's analyses of whether the NIT Warrant was statutorily permissible and whether it was allowed under Rule 41(b) are necessarily intertwined.

### 1.   Federal Magistrates Act

Section 636(a) of the Federal Magistrates Act establishes "jurisdictional limitations on the power of magistrate judges[.]"  United States v. Krueger, 809 F.3d 1109, 1122 (10th Cir. 2015) (Gorsuch, J., concurring).  It provides, in relevant part:

> (a) Each United States magistrate judge serving under this chapter shall have within the district in which sessions are held by the court that appointed the magistrate judge, at other places where that court may function, and elsewhere as authorized by law--
>
> > (1) all powers and duties conferred or imposed . . . by law or by the Rules of Criminal Procedure[.]

28 U.S.C. § 636(a).  Levin argues that the magistrate judge's issuance of a warrant to search property outside of her judicial district violated the territorial restrictions provided in the first paragraph of Section 636(a).  Def.'s Mot. 12.  In other words, because the NIT Warrant approved a search of property outside the Eastern District of Virginia ("the district in which sessions are held by the court that appointed the magistrate"),

[8]

and neither of the other clauses in the first paragraph of
Section 636(a) applies, Levin contends that the magistrate judge
lacked jurisdiction to issue it.  See id.  The government, for
its part, notes that Levin does not meaningfully distinguish
between the requirements of the statute and of Rule 41(b), and
advances the same arguments to support the magistrate judge's
authority to issue the NIT Warrant under Section 636(a) and
under Rule 41(b).  Gov't's Resp. 21.

As discussed in more detail infra Part III(A)(2)(i), the
Court is persuaded by Levin's argument that the NIT Warrant
indeed purported to authorize a search of property located
outside the district where the issuing magistrate judge sat.
The magistrate judge had no jurisdiction to issue such a warrant
under the first paragraph of Section 636(a).  The Court also
concludes that Section 636(a)(1) is inapposite because Rule
41(b) did not confer on the magistrate judge authority to issue
the NIT Warrant Levin challenges here, see infra Part III(A)(2),
and the government points to no other "law or . . . Rule[] of
Criminal Procedure" on which the magistrate judge could have
based its jurisdiction pursuant to Section 636(a)(1), see infra
note 11.  Consequently, the Court holds that the Federal
Magistrates Act did not authorize the magistrate judge to issue
the NIT Warrant here.

     **2.   Rule 41(b)**

Rule 41(b), titled "Authority to Issue a Warrant,"

provides as follows:

At the request of a federal law enforcement officer or
an attorney for the government:

(1) a magistrate judge with authority in the district
-- or if none is reasonably available, a judge of a
state court of record in the district -- has authority
to issue a warrant to search for and seize a person or
property located within the district;

(2) a magistrate judge with authority in the district
has authority to issue a warrant for a person or
property outside the district if the person or
property is located within the district when the
warrant is issued but might move or be moved outside
the district before the warrant is executed;

(3) a magistrate judge -- in an investigation of
domestic terrorism or international terrorism -- with
authority in any district in which activities related
to the terrorism may have occurred has authority to
issue a warrant for a person or property within or
outside that district;

(4) a magistrate judge with authority in the district
has authority to issue a warrant to install within the
district a tracking device; the warrant may authorize
use of the device to track the movement of a person or
property located within the district, outside the
district, or both; and

(5) a magistrate judge having authority in any
district where activities related to the crime may
have occurred, or in the District of Columbia, may
issue a warrant for property that is located outside
the jurisdiction of any state or district, but within
any of the following:

(A) a United States territory, possession, or
commonwealth;

(B) the premises -- no matter who owns them -- of
a United States diplomatic or consular mission in
a foreign state, including any appurtenant

[10]

building, part of a building, or land used for
the mission's purposes; or

(C) a residence and any appurtenant land owned or
leased by the United States and used by United
States personnel assigned to a United States
diplomatic or consular mission in a foreign
state.

Fed. R. Crim. P. 41(b).

The government argues for a liberal construction of Rule
41(b) that would authorize the type of search that occurred here
pursuant to the NIT Warrant.  See Gov't's Resp. 18-20.
Specifically, it argues that subsections (1), (2), and (4) of
Rule 41(b) are each sufficient to support the magistrate judge's
issuance of the NIT Warrant.  Id.  This Court is unpersuaded by
the government's arguments.  Because the NIT Warrant purported
to authorize a search of property located outside the Eastern
District of Virginia, and because none of the exceptions to the
general territorial limitation of Rule 41(b)(1) applies, the
Court holds that the magistrate judge lacked authority under
Rule 41(b) to issue the NIT Warrant.

### i.   Rule 41(b)(1)

The government advances two distinct lines of argument as
to why Rule 41(b)(1) authorizes the NIT Warrant.  One is that
all of the property that was searched pursuant to the NIT
Warrant was actually located within the Eastern District of
Virginia, where the magistrate judge sat: since Levin -- as a

user of Website A -- "retrieved the NIT from a server in the
Eastern District of Virginia, and the NIT sent [Levin's] network
information back to a server in that district," the government
argues the search it conducted pursuant to the NIT Warrant
properly can be understood as occurring within the Eastern
District of Virginia.  Gov't's Resp. 20.  This is nothing but a
strained, after-the-fact rationalization.  In its explanation of
the "Place to be Searched," the NIT Warrant made clear that the
NIT would be used to "obtain[] information" from various
"activating computers[.]"[8]  NIT Warrant 32.  As is clear from
Levin's case -- his computer was located in Massachusetts -- at
least some of the activating computers were located outside of
the Eastern District of Virginia.  That the Website A server is
located in the Eastern District of Virginia is, for purposes of
Rule 41(b)(1), immaterial, since it is not the server itself
from which the relevant information was sought.  See United
States v. Michaud, No. 3:15-cr-05351-RJB, 2016 WL 337263 at *6
(W.D. Wash. Jan. 28, 2016) (examining the permissibility of the

---

[8] That the cover page of the NIT Warrant application
indicated that the property to be searched was located in the
Eastern District of Virginia, see NIT Warrant 1, does not alter
this conclusion.  See Michaud, 2016 WL 337263 at *4 (observing
that to read this NIT Warrant as authorizing a search of
property located exclusively within the Eastern District of
Virginia, on the basis of its cover page, is "an overly narrow
reading of the NIT Warrant that ignores the sum total of its
content.").

same NIT Warrant and concluding that Rule 41(b)(1) did not authorize the search "because the object of the search and seizure was Mr. Michaud's computer, not located in the Eastern District of Virginia").

The government's other argument is that where, as here, it is impossible to identify in advance the location of the property to be searched, Rule 41(b)(1) ought be interpreted to allow "a judge in the district with the strongest known connection to the search" to issue a warrant.  See Gov't's Resp. 20.  This argument fails, though, because it adds words to the Rule.  See Lopez-Soto v. Hawayek, 175 F.3d 170, 173 (1st Cir. 1999) ("Courts have an obligation to refrain from embellishing statutes by inserting language that Congress opted to omit.").

### ii.  Rule 41(b)(2)

Rule 41(b)(2) confers on magistrate judges the authority "to issue a warrant of a person or property outside the district if the person or property is located within the district when the warrant is issued but might move or be moved outside the district before the warrant is executed."  Fed. R. Crim. P. 41(b)(2).  The government argues that because the NIT (i.e., the computer code used to generate the identifying information from users' computers) was located in the Eastern District of Virginia at the time the warrant was issued, this subsection applies.  Gov't's Resp. 19.  As discussed above, however, the

[13]

actual property to be searched was not the NIT nor the server on which it was located, but rather the users' computers. Therefore, Rule 41(b)(2) is inapposite.

### iii. Rule 41(b)(4)

The Court is similarly unpersuaded by the government's argument regarding Rule 41(b)(4), which authorizes magistrate judges in a particular district "to issue a warrant to install within the district a tracking device," even where the person or property on whom the device is installed later moves outside the district, see Fed. R. Crim. P. 41(b)(4).  The government likens the transmittal of the NIT to Website A users' computers to the installation of a tracking device in a container holding contraband, insofar as each permits the government to identify the location of illegal material that has moved outside the relevant jurisdiction.  Gov't's Resp. 19-20.  This analogy does not persuade the Court that the NIT properly may be considered a tracking device, regardless of where the "installation" occurred.[9]

---

[9] Indeed, as the court pointed out in Michaud, which involved the same NIT Warrant:

> If the 'installation' occurred on the government-controlled computer, located in the Eastern District of Virginia, applying the tracking device exception breaks down, because [users of Website A] never controlled the government-controlled computer, unlike a car with a tracking device leaving a particular district.  If the installation occurred on [the

B.    **Suppression**

Having concluded that neither the Federal Magistrates Act

nor Rule 41(b) authorized the issuance of the NIT Warrant, the

Court now turns to the question of whether suppression of the

evidence obtained pursuant to the NIT Warrant is an appropriate

remedy.  Levin argues that this evidence ought be suppressed

because the magistrate judge lacked jurisdiction to issue the

NIT Warrant and because Levin was prejudiced by the Rule 41

violation.  Def.'s Mot. 13-14.  The government argues that even

if the issuance of the NIT Warrant was not sanctioned by Rule 41

or Section 636(a), suppression is too extreme a remedy, as any

violation of the relevant rule or statute was merely ministerial

and there was no resulting prejudice to Levin.  Gov't's Resp.

---

individual Website A user's] computer, applying the
tracking device exception again fails, because [the
user's] computer was never physically located within
the Eastern District of Virginia.

2016 WL 337263 at *6.  In any case, the Court is persuaded by
the Southern District of Texas's interpretation of
"installation."  See In re Warrant to Search a Target Computer
at Premises Unknown, 958 F.Supp.2d 753, 758 (S.D. Tex. 2013)
(rejecting government's application for a warrant remotely to
extract identifying information from a computer in an unknown
location, noting that "there is no showing that the installation
of the 'tracking device' (i.e. the software) would take place
within this district.  To the contrary, the software would be
installed on a computer whose location could be anywhere on the
planet.").  Under that approach, the "installation" of the NIT
occurred not within the Eastern District of Virginia, where the
server is located, but rather at the site of each user's
computer.  See id.

16.  Further, the government contends that the good-faith
exception to the exclusionary rule ought preclude suppression of
the evidence seized.  Id. at 21-23.

The Court concludes that the violation at issue here is
distinct from the technical Rule 41 violations that have been
deemed insufficient to warrant suppression in past cases, and,
in any event, Levin was prejudiced by the violation.  Moreover,
the Court holds that the good-faith exception is inapplicable
because the warrant at issue here was void ab initio.

### 1.   Nature of the Rule 41 Violation

A violation of Rule 41 that is purely technical or
ministerial gives rise to suppression only where the defendant
demonstrates that he suffered prejudice as a result of the
violation.  See United States v. Bonner, 808 F.2d 864, 869 (1st
Cir. 1986).  The government apparently submits that all Rule 41
violations "are essentially ministerial," and accordingly that
suppression is an inappropriate remedy absent a showing of
prejudice.  Gov't's Resp. 16 (citing United States v. Burgos-
Montes, 786 F.3d 92, 109 (1st Cir. 2015)).

Rule 41, however, has both procedural and substantive
provisions -- and the difference matters.  Courts faced with
violations of Rule 41's procedural requirements have generally
found such violations to be merely ministerial or technical, and

as a result have determined suppression to be unwarranted.[10]  By
contrast, this case involves a violation of Rule 41(b), which is
"a substantive provision[.]"  United States v. Berkos, 543 F.3d
392, 398 (7th Cir. 2008); see also United States v. Krueger, 809
F.3d 1109, 1115 n.7 (10th Cir. 2015) (noting that Rule 41(b)(1)
"is unique from other provisions of Rule 41 because it
implicates substantive judicial authority," and accordingly
concluding that past cases involving violations of other
subsections of Rule 41 "offer limited guidance") (internal
quotation marks and citation omitted).  Thus, it does not follow
from cases involving violations of Rule 41's procedural
provisions that the Rule 41(b) violation at issue here -- which
involves the authority of the magistrate judge to issue the
warrant, and consequently, the underlying validity of the

---

[10] These violations implicate the various subsections of
Rule 41, with the exception of subsection (b).  See, e.g.,
Burgos-Montes, 786 F.3d at 108-09 (magistrate judge's "failure .
. . to define the time period of the search when the form itself
provides that the search is to be completed within [10 days],
and . . . failure to designate a magistrate to whom the form
should be returned" was technical violation of Rule 41(e));
Bonner, 808 F.2d at 869 (officers' failure to comply with Rule
41(f) requirement of leaving a copy of the warrant at the place
to be searched was ministerial and did not call for suppression
of resulting evidence); United States v. Dauphinee, 538 F.2d 1,
3 (1st Cir. 1976) ("The various procedural steps required by
Rule 41(d) are basically ministerial[,]" and therefore
suppression of evidence obtained in violation of that provision
was not warranted absent showing of prejudice); United States v.
Pryor, 652 F.Supp. 1353, 1365-66, (D. Me. 1987) (violation of
Rule 41(c)'s procedural requirements regarding nighttime
searches did not call for suppression).

warrant -- was simply ministerial.  See United States v. Glover, 736 F.3d 509, 515 (D.C. Cir. 2013) (concluding that a Rule 41(b) violation constitutes a "jurisdictional flaw" that cannot "be excused as a 'technical defect'").

Because the violation here involved "substantive judicial authority" rather than simply "the procedures for obtaining and issuing warrants," Krueger, 809 F.3d at 1115 n.7, the Court cannot conclude that it was merely ministerial; in fact, because Rule 41(b) did not grant her authority to issue the NIT warrant, the magistrate judge was without jurisdiction to do so.[11]  The government characterizes Levin's challenge as targeting "the location of the search, not probable cause or the absence of judicial approval."  Gov't's Resp. 16.  Here, however, because the magistrate judge lacked authority, and thus jurisdiction, to issue the NIT Warrant, there simply was no judicial approval. See United States v. Houston, 965 F.Supp.2d 855, 902 n.12 (E.D. Tenn. 2013) ("A search warrant issued by an individual without

---

[11] For the magistrate judge to have had jurisdiction to issue the warrant under Section 636(a), she must have had authority to do so under Rule 41(b), as the government has pointed to no alternative statutory authority or federal rule that could serve as the basis for such jurisdiction.  Moreover, the government's argument regarding courts' inherent authority to issue warrants, see Gov't's Resp. 20-21, does not extend to magistrate judges, whose authority derives from -- and is bounded by -- the specific statutory provisions and rules discussed herein.

legal authority to do so is 'void <u>ab initio</u>'") (quoting <u>United</u> <u>States</u> v. <u>Master</u>, 614 F.3d 236, 241 (6th Cir. 2010)); <u>United</u> <u>States</u> v. <u>Peltier</u>, 344 F.Supp.2d 539, 548 (E.D. Mich. 2004) ("A search warrant signed by a person who lacks the authority to issue it is void as a matter of law.") (citation omitted); <u>cf.</u> <u>State</u> v. <u>Surowiecki</u>, 440 A.2d 798, 799 (Mont. 1981) ("[A] lawful signature on the search warrant by the person authorized to issue it [is] essential to its issuance[,]" such that an unsigned warrant is void under state law and confers no authority to act, despite existence of probable cause).

NITs, while raising serious concerns,[12] are legitimate law enforcement tools.  Indeed, perhaps magistrate judges should have the authority to issue these types of warrants.  <u>See</u> <u>In re</u> <u>Warrant to Search a Target Computer at Premises Unknown</u>, 958 F.Supp.2d at 761 (noting that "there may well be a good reason

---

[12] The Court expresses no opinion on the use of this particular police tactic under these circumstances, but notes that its use in the context of investigating and prosecuting child pornography has given rise to significant debate.  <u>See,</u> <u>e.g.</u>, <u>The Ethics of a Child Pornography Sting</u>, N.Y. Times, Jan. 27, 2016, http://www.nytimes.com/roomfordebate/2016/01/27/the-ethics-of-a-child-pornography-sting.  The continuing harm to the victims of this hideous form of child abuse is the distribution of the photographs and videos in which the victims appear.  <u>See,</u> <u>e.g.</u>, <u>United States</u> v. <u>Kearney</u>, 672 F.3d 81, 94 (1st Cir. 2012) (internal citations omitted).  Unlike those undercover stings where the government buys contraband drugs to catch the dealers, here the government disseminated the child obscenity to catch the purchasers -- something akin to the government itself selling drugs to make the sting.

to update the territorial limits of [Rule 41] in light of

advancing computer search technology").[13]   Today, however, no

_____

      [13] Whether magistrate judges should have the authority to
issue warrants to search property located outside of their
districts under circumstances like the ones presented here has
been the subject of recent deliberations by the Advisory
Committee on Criminal Rules.  See Memorandum from Hon. Reena
Raggi, Advisory Committee on Criminal Rules, to Hon. Jeffrey S.
Sutton, Chair, Committee on Rules of Practice and Procedure
("Raggi Mem.") (May 5, 2014); Letter from Mythili Raman, Acting
Assistant Attorney General, to Hon. Reena Raggi, Chair, Advisory
Committee on the Criminal Rules ("Raman Letter") (Sept. 18,
2013); cf. Zach Lerner, A Warrant to Hack: An Analysis of the
Proposed Amendments to Rule 41 of the Federal Rules of Criminal
Procedure, 18 Yale J. L. & Tech. 26 (2016).  As Levin points out
in his motion, see Def.'s Mot. 18-19, the following proposed
amendment to Rule 41(b) is currently under consideration:

      (6)   a magistrate judge with authority in any district
            where activities related to a crime may have
            occurred has authority to issue a warrant to use
            remote access to search electronic storage media
            and to seize or copy electronically stored
            information located within or outside that
            district if:

            (A)   the district where the media or information
                  is located has been concealed through
                  technological means; or

            (B)   in an investigation of a violation of 18
                  U.S.C. § 1030(a)(5), the media are protected
                  computers that have been damaged without
                  authorization and are located in five or
                  more districts.

Preliminary Draft of Proposed Amendments to the Federal
Rules of Appellate, Bankruptcy, Civil, and Criminal
Procedure 337-38 ("Proposed Rule 41 Amendment"), Committee
on Rules of Practice and Procedure of the Judicial
Conference of the United States (August 2014),
http://www.uscourts.gov/file/preliminary-draft-proposed-
amendments-federal-rules-appellate-bankruptcy-civil-and-
criminal.

magistrate judge has the authority to issue this NIT warrant.

Accordingly, the warrant here was void.

### 2.   Prejudice

Even were the Court to conclude that the Rule 41(b)
violation was ministerial, suppression would still be
appropriate, as Levin has demonstrated that he suffered
prejudice.  See Burgos-Montes, 786 F.3d at 109 (a Rule 41
violation "does not require suppression unless the defendant can
demonstrate prejudice") (emphasis added); cf. Krueger, 809 F.3d
at 1117 (affirming district court's order granting defendant's
motion to suppress "[b]ecause [the defendant] met his burden of
establishing prejudice and because suppression furthers the
purpose of the exclusionary rule by deterring law enforcement
from seeking and obtaining warrants that clearly violate Rule

---

Proponents of the amendment contend that it ought be
adopted in order "to address two increasingly common
situations: (1) where the warrant sufficiently describes
the computer to be searched but the district within which
that computer is located is unknown, and (2) where the
investigation requires law enforcement to coordinate
searches of numerous computers in numerous districts."
Raman Letter 1.

While the Advisory Committee on Criminal Rules
unanimously approved the proposed amendment, Raggi Mem. 5,
it has drawn criticism from stakeholders ranging from the
American Civil Liberties Union, see Letter from American
Civil Liberties Union to Members of the Advisory Committee
on Criminal Rules (Oct. 31, 2014), to Google, see Letter
from Richard Salgado, Director, Law Enforcement and
Information Security, Google Inc., to Judicial Conference
Advisory Committee on Criminal Rules (Feb. 13, 2015).

41(b)(1)").  "To show prejudice, defendants must show that they
were subjected to a search that might not have occurred or would
not have been so abrasive had Rule 41[] been followed."[14]
Bonner, 808 F.2d at 869.  Here, had Rule 41(b) been followed,
the magistrate judge[15] would not have issued the NIT Warrant, and
therefore the search conducted pursuant to that Warrant might

---

[14] Courts outside this district faced with Rule 41(b)
violations have considered (and in some cases, adopted)
alternative formulations of the prejudice inquiry.  See, e.g.,
Krueger, 809 F.3d at 1116 (evaluating government's proposed
prejudice standard, "which would preclude defendants from
establishing prejudice in this context so long as the
[g]overnment hypothetically could have obtained the warrant from
a different federal magistrate judge with warrant-issuing
authority under the Rule"); Michaud, 2016 WL 337263 at *6-7.  In
Michaud, the court reasoned that the most "sensible
interpretation" of the prejudice standard in this context is
asking "whether the evidence obtained from a warrant that
violates Rule 41(b) could have been available by other lawful
means[.]"  2016 WL 337263 at *6 (emphasis added).  This Court
respectfully declines to follow the Michaud court's approach,
instead adhering to the prejudice standard generally applicable
to Rule 41 violations.  Cf. Krueger, 809 F.3d at 1116 (rejecting
government's proposed prejudice standard, which "would preclude
defendants from establishing prejudice in this context so long
as the Government hypothetically could have obtained the warrant
from a different federal magistrate judge with warrant-issuing
authority under the Rule[,]" reasoning that "[w]hen it comes to
something as basic as who can issue a warrant, we simply cannot
accept such a speculative approach" and that instead the
standard "should be anchored to the facts as they actually
occurred").

[15] This is not to say that a district judge could not have
issued the NIT Warrant, since Rule 41(b) and Section 636(a) bear
only on the authority of magistrate judges to issue warrants.
See infra Part III(B)(4).

not have occurred.[16]  See <u>Krueger</u>, 809 F.3d at 1116 (holding that
defendant suffered prejudice as a result of having been
subjected to a search that violated Rule 41(b), since that
search "might not have occurred because the Government would not
have obtained [the warrant] had Rule 41(b)(1) been followed.").
<u>Contrast</u> <u>United States</u> v. <u>Scott</u>, 83 F.Supp.2d 187, 203 (D. Mass.
2000) (Rule 41(d) violation did not prejudice defendant, since
"the nature of the search would not have changed even if [the
defendant] had been given a copy of the warrant prior to the
search, as required under the rules); <u>United States</u> v. <u>Jones</u>,
949 F.Supp.2d 316, 323 (D. Mass. 2013) (Saris, C.J.) (law
enforcement officer's failure to leave the defendant with a copy
of the warrant, as required by Rule 41(f), was not prejudicial).

    To rebut Levin's prejudice argument, the government appears
to ignore the NIT Warrant altogether, baldly stating that
"[w]here there is probable cause, judicial approval, and the
computer server which the defendant accessed to view child
pornography was physically located in the jurisdiction where the
issuing magistrate was located, there can be no prejudice to the

---

[16] It follows from this that the government might not have
obtained the evidence it seized pursuant to the Residential
Warrant, since the application for that warrant was based on
information it acquired through the execution of the NIT
Warrant.  As the government itself points out, it "had no way to
know where the defendant was without first using the NIT[.]"
Gov't's Resp. 15.

defendant." Gov't's Resp. 16. Simply put, this is not the standard for determining prejudice, and the government directs the Court to no authority to support its assertion. Moreover, as discussed above, the Rule 41(b) violation here had the effect of vitiating the purported judicial approval so, even by this standard, the government's argument against prejudice must fail.

### 3. Good-Faith Exception

Finally, the government argues that, even if the NIT Warrant violated the Federal Magistrates Act and Rule 41(b), the Court ought not exclude the evidence seized pursuant to the NIT Warrant because the law enforcement officers here acted in good faith. See Gov't's Resp. 21 (citing United States v. Leon, 468 U.S. 897, 918, 926 (1984)). Whether the good-faith exception applies where a warrant was void is a question of first impression in this Circuit, and an unresolved question more broadly. See Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 1.3(f) n.60 ("It is unclear whether the [Leon good-faith] rule extends to a warrant 'that was essentially void ab initio' because of 'the issuing court's lack of jurisdiction to authorize the search in the first instance.'") (quoting United States v. Baker, 894 F.2d 1144, 1147 (10th Cir. 1990)). This Court holds that it does not.

In Leon, the Supreme Court held that suppression was unwarranted where evidence was obtained pursuant to a search

warrant that was later determined to be unsupported by probable cause, since the executing officers acted in objectively reasonable reliance on the warrant's validity.  See 468 U.S. at 922.  In reaching this conclusion, the Supreme Court observed that "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according great deference to a magistrate judge's determination."  Id. at 914 (internal quotation marks and citation omitted).

Leon contains not the slightest suggestion, however, that the same deference ought apply when magistrate judges determine their own jurisdiction.  Indeed, the Supreme Court's conclusion presupposes that the issuing magistrate judge was authorized to issue the challenged warrant.  Cf. United States v. Houston, No. 3:13-09-DCR, 2014 WL 259085 at *26 n.14 (E.D. Tenn. Jan. 23, 2014) (where a warrant is "void ab initio . . . the [c]ourt never reaches the question of whether the search warrant is supported by probable cause") (internal citation omitted). Moreover, Leon deals explicitly with a "subsequently invalidated warrant," 468 U.S. at 918 (emphasis added), rather than a warrant that was void at the time of its issuance.  The latter

raises qualitatively different concerns, as several post-<u>Leon</u>
courts have recognized.[17]

Over the years since <u>Leon</u>, the Supreme Court has expanded
the good-faith exception to contexts beyond those <u>Leon</u>
specifically addressed.[18]  None of the Supreme Court's post-<u>Leon</u>
good-faith cases, however, involved a warrant that was void <u>ab</u>
<u>initio</u>, and therefore none direct the conclusion that the good-

---

[17] Courts interpreting the scope of <u>Leon</u> have repeatedly
held or acknowledged in dicta that where evidence is obtained
pursuant to a warrant that is void <u>ab initio</u>, the good-faith
exception has no application.  <u>See, e.g.</u>, <u>State</u> v. <u>Wilson</u>, 618
N.W.2d 513, 520 (S.D. 2000) (holding that good-faith exception
could not save evidence obtained pursuant to warrant issued by
state judge acting outside territorial jurisdiction, since
"[a]ctions by a police officer cannot be used to create
jurisdiction, even when done in good faith"); <u>State</u> v. <u>Nunez</u>,
634 A.2d 1167, 1171 (R.I. 1993) (stating in dicta that <u>Leon</u>
good-faith exception "would be inapplicable to this case
because" it involved a warrant issued by a retired judge without
authority to do so, and thus was "void <u>ab initio</u>"); <u>Commonwealth</u>
v. <u>Shelton</u>, 766 S.W.2d 628, 629-30 (Ky. 1989) (noting in dicta
that <u>Leon</u> would not be applicable since "in the case at bar, we
are not confronted with a technical deficiency; but rather a
question of jurisdiction"); <u>United States</u> v. <u>Vinnie</u>, 683 F.Supp.
285, 288-89 (D. Mass. 1988) (Skinner, J.) (holding <u>Leon</u>'s good-
faith exception inapplicable since the case involved not the
"determination of what quantum of evidence constitutes probable
cause" but rather "the more fundamental problem of a magistrate
judge acting without subject matter jurisdiction").

[18] <u>Leon</u>, along with its companion case, <u>Massachusetts</u> v.
<u>Sheppard</u>, 468 U.S. 981 (1984), "contemplated two circumstances:
one in which a warrant is issued and is subsequently found to be
unsupported by probable cause and the other in which a warrant
is supported by probable cause, but is technically deficient."
<u>Vinnie</u>, 683 F.Supp. at 288.

faith exception ought apply to this case.[19]   This Court is aware

of only one federal circuit court to address the question of

whether Leon's good-faith exception applies in these

circumstances: the Sixth Circuit.   See Master, 614 F.3d 236;

United States v. Scott, 260 F.3d 512 (6th Cir. 2001).   Scott

involved a search warrant issued by a retired judge who lacked

authority to do so.   260 F.3d at 513.   After holding that such

warrant was necessarily void ab initio, id. at 515, the court

concluded that, "[d]espite the dearth of case law, we are

confident that Leon did not contemplate a situation where a

---

[19] The good-faith exception has been held to apply where
officers execute a warrant in reliance on existing law.   See
Davis v. United States, 131 S. Ct. 2419 (2011) (good-faith
exception precluded suppression of evidence obtained through a
search incident to arrest that was proper under binding
appellate precedent at the time of the search but which was
later held to be unlawful); Illinois v. Krull, 480 U.S. 340
(1987) (good-faith exception applied to a warrantless
administrative search conducted pursuant to a statute later
found to be unconstitutional, where the officer's reliance on
the constitutionality of the statute was objectively
reasonable).   Unlike in those cases, here there was no
"intervening change in the law that made the good-faith
exception relevant."   United States v. Wurie, 728 F.3d 1 (1st
Cir. 2013).
    The Supreme Court has also applied the good-faith exception
in circumstances involving one-off mistakes of fact that
implicate the validity of a warrant at the time of its
execution.   See Herring v. United States, 555 U.S. 135 (2009)
(good-faith exception applied to evidence improperly obtained as
a result of law enforcement's negligent record-keeping
practices); Arizona v. Evans, 514 U.S. 1 (1995) (evidence seized
in violation of the Fourth Amendment as a result of a clerical
error on the part of court personnel was covered by good-faith
exception and thus did not warrant suppression).   Here, in
contrast, the warrant was void at its inception.

warrant is issued by a person lacking the requisite legal authority." Id.

Nine years later, the Sixth Circuit effectively reversed itself in Master, which involved a warrant issued by a state judge to search property outside his district, which was unauthorized under Tennessee law. 614 F.3d at 239. The court held that the warrant was invalid for the same reason as was the warrant in Scott,[20] id. at 240, but that the good-faith exception to the exclusionary rule applied because Scott's reasoning was "no longer clearly consistent with current Supreme Court doctrine." Id. at 242. In particular, it noted that "[t]he Supreme Court has effectively created a balancing test by requiring that in order for a court to suppress evidence following the finding of a Fourth Amendment violation, 'the benefits of deterrence must outweigh the costs.'" Id. at 243 (quoting Herring v. United States, 555 U.S. 135, 142 (2009)).

The Master court read the Supreme Court's recent good-faith cases too broadly.[21] This Court is persuaded instead by the

---

[20] The difference between the issuer of the warrant in Scott and in Master -- namely, a retired judge with "no authority to approve any warrants," and an active judge with authority to issue warrants within his district, respectively -- was "immaterial" for the purpose of determining whether the warrant was valid. Master, 614 F.3d at 240.

[21] Even in Master, it should be noted, the court acknowledged that the recent Supreme Court cases addressing the

rationale in Scott and cases applying the holding of that
decision, see, e.g., United States v. Neering, 194 F.Supp.2d 620
(E.D. Mich. 2002) (warrant issued by an official who was not
properly appointed and therefore lacked issuing authority was
void, and under Scott, the good-faith exception did not apply).
Neither Hudson nor Herring -- both of which the Master court
cited in support of its conclusion that Scott's holding is no
longer tenable, see 614 F.3d at 242 -- requires the conclusion
that the good-faith exception applies to evidence seized
pursuant to a warrant that was void ab initio.[22]

---

good-faith exception "do[] not directly overrule our previous
decision in Scott."  614 F.3d at 243.

   [22] In Hudson, 547 U.S. 586 (2006), the Supreme Court held
that suppression was not an appropriate remedy for a violation
of the knock-and-announce rule.  See id. at 599.  In reaching
this conclusion, the plurality explicitly distinguished the
interests protected by the warrant requirement and the knock-
and-announce requirement.  See id. at 593.  With respect to the
warrant requirement, it noted that "[u]ntil a valid warrant has
issued, citizens are entitled to shield their persons, houses,
papers, and effects . . . from the government's scrutiny[,]" and
that "[e]xclusion of the evidence obtained by a warrantless
search vindicates that entitlement."  Id. (internal quotation
marks and citations omitted) (emphasis added).  As no valid
warrant was ever issued here, and the government does not argue
that an exception to the warrant requirement applies, exclusion
is appropriate.
   Herring, too, is distinguishable.  There, law enforcement
officers executed an arrest warrant that had been rescinded.
555 U.S. at 138.  The Supreme Court held that since the mistake
was attributable to "isolated negligence attenuated from the
arrest" -- specifically, a recordkeeping error -- the good-faith
exception to the exclusionary rule applied.  Id. at 137.
Although that case makes much of the connection between the
exclusionary rule and the goal of deterrence and culpability of

Because a warrant that was void at the outset is akin to no warrant at all, cases involving the application of the good-faith exception to evidence seized pursuant to a warrantless search are especially instructive.  In United States v. Curzi, 867 F.2d 36 (1st Cir. 1989), the First Circuit declined to "recognize[] a good-faith exception in respect to warrantless searches."  Id. at 44.[23]  To hold that the good-faith exception is applicable here would collapse the distinction between a voidable and a void warrant.  But this distinction is meaningful: the former involves "judicial error," such as "misjudging the sufficiency of the evidence or the warrant

_____

law enforcement, see id. at 141-43, it says nothing about whether the same calculus ought apply where there was never jurisdiction to issue a valid warrant in the first place.

    [23] While no case has directly disturbed this holding, the First Circuit has since held that the good-faith exception may exempt from exclusion evidence seized pursuant to an unconstitutional warrantless search "'conducted in objectively reasonable reliance on binding appellate precedent[.]'"  United States v. Sparks, 711 F.3d 58, 62 (1st Cir. 2013) (quoting Davis, 131 S.Ct. at 2434).  Cases like Sparks, though, are readily distinguishable: the officers in Sparks were entitled to rely on circuit precedent indicating that they could conduct the challenged search without a warrant; by contrast, here no binding appellate precedent authorized the officers to undertake the search either without a warrant or pursuant to one that was void at the outset.  To determine whether the good-faith exception applied in Sparks, the court asked: "what universe of cases can the police rely on?  And how clearly must those cases govern the current case for that reliance to be objectively reasonable?"  711 F.3d at 64.  Such questions are wholly inapposite here.

application's fulfillment of the statutory requirements[,]"
while the latter involves "judicial <u>authority</u>," <u>i.e.</u>, a judge
"act[ing] outside of the law, outside of the authority granted
to judges in the first place."  <u>State</u> v. <u>Hess</u>, 770 N.W.2d 769,
776 (Ct. App. Wis. 2009) (emphasis added); <u>cf.</u> <u>Scott</u>, 260 F.3d
at 515 ("<u>Leon</u> presupposed that the warrant was issued by a
magistrate or judge clothed in the proper legal authority,
defining the issue as whether the exclusionary rule applied to
'evidence obtained by officers acting in reasonable reliance on
a search warrant <u>issued by a detached and neutral magistrate</u> but
ultimately found to be unsupported by probable cause.'")
(quoting <u>Leon</u>, 468 U.S. at 900); <u>State</u> v. <u>Vickers</u>, 964 P.2d 756,
762 (Mont. 1998) (distinguishing <u>Leon</u> and concluding that "[i]f
a search warrant is void <u>ab initio</u>, the inquiry stops and all
other issues pertaining to the validity of the search warrant,
such as whether the purpose of the exclusionary rule is served,
are moot.").  Were the good-faith exception to apply here,
courts would have to tolerate evidence obtained when an officer
submitted something that reasonably looked like a valid warrant
application, to someone who, to the officer, appeared to have
authority to approve that warrant application.  <u>Cf.</u> <u>Krueger</u>, 809
F.3d at 1126 (Gorsuch, J., concurring).  This Court holds that

such an expansion of the good-faith exception is improvident, and not required by current precedent.[24]

Even were the Court to hold that the good-faith exception _could_ apply to circumstances involving a search pursuant to a warrant issued without jurisdiction, it would decline to rule such exception applicable here.  For one, it was not objectively reasonable for law enforcement -- particularly "a veteran FBI agent with 19 years of federal law enforcement experience[,]" Gov't's Resp. 7-8 -- to believe that the NIT Warrant was properly issued considering the plain mandate of Rule 41(b). See Glover, 736 F.3d at 516 ("[I]t is quite a stretch to label the government's actions in seeking a warrant so clearly in violation of Rule 41 as motivated by 'good faith.'"); cf. United States v. McKeever, 894 F.2d 712, 717 (5th Cir. 1990) (good-faith exception did not apply where sheriff "who was the prime mover in obtaining and executing the search . . . knew both that

---

[24] While the exclusionary rule has its detractors, see, e.g., Akhil Reed Amar, Fourth Amendment First Principles, 107 Harv. L. Rev. 757, 785-800 (1994) (arguing that suppression is an "awkward and embarrassing remedy" that is unsupported by the text of the Fourth Amendment), "when a criminal conviction is predicated on a violation of the Constitution's criminal procedure requirements, including the Fourth Amendment, the conviction works an ongoing deprivation of liberty without due process," Richard M. Re, The Due Process Exclusionary Rule, 127 Harv. L. Rev. 1885, 1887 (2014); see also Carol S. Steiker, Second Thoughts About First Principles, 107 Harv. L. Rev. 820, 848-852 (1994).

he had to obtain a warrant from a court of record . . . and that

[the issuing judge] was not a judge of a court of record.").[25]

Moreover, even analyzed under <u>Herring</u>, the conduct at issue here

can be described as "systemic error or reckless disregard of

_____

[25] In its oral argument opposing this motion, Elec. Clerk's Notes, ECF No. 62, the government indicated that the particular officers executing the search cannot be charged with the knowledge that the warrant was issued in violation of the Federal Magistrates Act and Rule 41(b).  But it would be incongruous to view these officers' conduct in isolation.  As Professor Amsterdam articulated:

> [S]urely it is unreal to treat the offending officer as a private malefactor who just happens to receive a government paycheck.  It is the government that sends him out on the streets with the job of repressing crime and of gathering criminal evidence in order to repress it.  It is the government that motivates him to conduct searches and seizures as a part of his job, empowers him and equips him to conduct them.  If it also receives the products of those searches and seizures without regard to their constitutionality and uses them as the means of convicting people whom the officer conceives it to be his job to get convicted, it is not merely tolerating but inducing unconstitutional searches and seizures.

Anthony G. Amsterdam, <u>Perspectives on the Fourth Amendment</u>, 58 Minn. L. Rev. 349, 432 (1974).

constitutional requirements,"[26] 555 U.S. at 147, and the Court

thus concludes that suppression is appropriate.[27]

### 4.   Policy Ramifications

Notwithstanding the Court's doctrinal analysis -- which has

now concluded -- the Court is mindful of the thorny practical

questions this motion raises.  The government asserts that to

hold that the magistrate judge lacked authority to issue the NIT

---

[26] The Supreme Court does not define "systemic negligence," Herring, 555 U.S. at 144, or "systemic error," id. at 147, and the former, at least, is apparently a new term in the Supreme Court's lexicon, see Wayne R. Lafave, The Smell of Herring: A Critique of the Supreme Court's Latest Assault on the Exclusionary Rule, 99 J. Crim. L. & Criminology 757, 784 (2009). It is difficult to ascertain the frequency with which similar warrants -- i.e., warrants to conduct remote searches of property located outside a magistrate judge's judicial district -- are granted, since these warrants are typically issued and remain under seal.  See Owsley, supra note 4, at 4-5. Nonetheless, it is clear to the Court that this is far from the sole instance in which the government has sought and obtained an NIT warrant.  See id. (listing cases involving NIT warrants or similar); Gov't's Resp. 23.

[27] The Court acknowledges that suppression is an extreme remedy, and consequently it considered whether, on this occasion -- but never again under these circumstances -- the evidence at issue ought be let in under the good-faith exception.  See State v. Hardy, No. 16964, 1998 WL 543368, at *6-7 (Ct. App. Ohio Aug. 28, 1998) (Fain, J., concurring in the judgment) (concluding that good-faith exception should apply to evidence obtained pursuant to a warrant issued without proper jurisdiction, but noting that "[o]nce we allow time for reasonable police officers within this jurisdiction to become acquainted with the territorial limits upon a magistrate judge's authority to issue search warrants, however, claims of good-faith exceptions to the warrant requirement are likely to be unavailing.").  Upon further deliberation, however, the Court concluded that to hold that Leon's good-faith exception applies here, where there never existed a valid warrant, would stretch that exception too far.

Warrant, and accordingly to suppress the evidence obtained
pursuant thereto, would create "an insurmountable legal barrier"
to law enforcement efforts in this realm.  Gov't's Resp. 16.
The Court is unmoved by the government's argument for two
reasons.

First, it cannot fairly be said that the legal barrier to
obtaining this type of NIT Warrant from a magistrate judge is
"insurmountable," because the government itself has come up with
a way of surmounting it -- namely, to change Rule 41(b), see
supra note 13.

Second, it does not follow from this opinion that there was
no way for the government to have obtained the NIT Warrant.
Section 636(a) and Rule 41(b) limit the territorial scope of
magistrate judges -- they say nothing about the authority of
district judges to issue warrants to search property located
outside their judicial districts.  Indeed, the quotation from
United States v. Villegas, 899 F.2d 1324 (2d Cir. 1990),
included in the government's own brief, is revealing: "Rule 41
does not define the extent of the court's power to issue a
search warrant. . . . Given the Fourth Amendment's warrant
requirements and assuming no statutory prohibition, the courts
must be deemed to have inherent power to issue a warrant when
the requirements of that Amendment are met."  Gov't's Resp. 20-
21 (quoting Villegas, 899 F.2d at 1334).  With respect to

district judges, neither Rule 41(b) nor Section 636(a) of the
Federal Magistrates Act restricts their inherent authority to
issue warrants consistent with the Fourth Amendment.  See
Krueger, 809 F.3d at 1125 n.6 (noting that analysis of a
magistrate judge's lack of statutory authority to issue warrants
to search outside his district has no bearing on "the statutory
authorities of a district judge to issue a warrant for an out-
of-district search[,]" and pointing out that "[u]nlike
magistrates, the jurisdiction of district courts is usually
defined by subject matter and parties rather than strictly by
geography."); cf. Matter of Application and Affidavit for a
Search Warrant, 923 F.2d 324, 326 (4th Cir. 1991) (contrasting a
district judge's "inherent power" with a magistrate's power,
which is either delegated by a district judge or expressly
provided by statute).[28]

---

[28] Surprisingly, a number of courts have apparently
understood Rule 41(b) to apply to district judges.  See, e.g.,
United States v. Golson, 743 F.3d 44, 51 (3d Cir. 2014) ("Rule
41(b) grants the authority to issue search warrants to federal
judges and judges of state courts of record."); Glover, 736 F.3d
at 515 (concluding that a warrant issued by a district judge to
search property outside that judge's district violated Rule
41(b)(2)); cf. United States v. Krawiec, 627 F.2d 577, 580 (1st
Cir. 1980) (indicating that all "federal warrants" are required
to comply with Rule 41).  On its face, however, Rule 41(b)
applies only to "a magistrate judge" and "a judge of a state
court of record."  The authority of district judges to issue
warrants arises elsewhere, see Villegas, 899 F.2d at 1334; 18
U.S.C. § 3102, and district judges are not subject to the
limitations set forth in Rule 41(b).

The magistrate judge who issued this warrant sits primarily in Alexandria, Virginia.  <u>See</u> NIT Warrant.  Four district judges and three senior judges sit routinely in that courthouse.  <u>See</u> <u>Alexandria Courthouse, United States District Court Eastern</u> <u>District of Virginia</u>, http://www.vaed.uscourts.gov/locations/al e.htm (last visited Apr. 20, 2016).  Here, the government had already involved one of those district judges in its investigation, albeit to obtain the Title III warrant.  <u>See</u> Title III Warrant.

Of course, were the government to present its NIT Warrant application to a district judge, it would still have to meet the requirements of the Fourth Amendment, which guarantees that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched."  U.S. Const. amend. IV.  Of special concern here is the particularity requirement, since, as the government points out, "the defendant's use of the Tor hidden service made it impossible for investigators to know what other districts, if any, the execution of the warrant would take place in," Gov't's Resp. 20.[29]  While this Court need not decide whether the

---

[29] Indeed, objectors to the proposed amendment to Rule 41(b), <u>see</u> <u>supra</u> note 13, have argued that a warrant that permitted law enforcement to remotely search computers at unknown locations would violate the Fourth Amendment's particularity requirement.  <u>See, e.g.</u>, <u>Written Statement of the</u>

particularity requirement was met here, it notes that despite

the difficulty highlighted by the government, at least two

courts have determined that <u>this precise warrant</u> was

sufficiently particular to pass constitutional muster.  <u>See</u>

<u>United States</u> v. <u>Epich</u>, No. 15-CR-163-PP, 2016 WL 953269, at *2

(E.D. Wis. Mar. 14, 2016); <u>United States</u> v. <u>Michaud</u>, No. 3:15-

cr-05351-RJB, 2016 WL 337263 at *4-*5 (W.D. Wash. Jan. 28,

2016).  <u>But cf.</u> <u>In re Warrant to Search a Target Computer at</u>

<u>Premises Unknown</u>, 958 F.Supp.2d at 755-58 (warrant to

"surreptitiously install[] software designed . . . to extract

certain stored electronic records" from "an unknown computer at

an unknown location" did not satisfy Fourth Amendment

particularity requirement).

## IV.   CONCLUSION

    Based on the foregoing analysis, the Court concludes that

the NIT Warrant was issued without jurisdiction and thus was

void <u>ab initio</u>.  It follows that the resulting search was

conducted as though there were no warrant at all.  Since

warrantless searches are presumptively unreasonable, and the

good-faith exception is inapplicable, the evidence must be

excluded.  Accordingly, Levin's motion to suppress, ECF No. 44,

is GRANTED.

---

Center for Democracy & Technology Before the Judicial Conference
Advisory Committee on Criminal Rules 2, Oct. 24, 2014.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE