1                    UNITED STATES DISTRICT COURT

2                      DISTRICT OF MASSACHUSETTS

3                                   No. 1:15-cr-10271-WGY

4

5

6    UNITED STATES OF AMERICA

7

8    vs.

9

10   ALEX LEVIN

11

12

13                          * * * * * * * *

14

                         For Hearing Before:
15                      Judge William G. Young

16
                            Motion Hearing
17

18                      United States District Court
                        District of Massachusetts (Boston)
19                      One Courthouse Way
                        Boston, Massachusetts 02210
20                      Friday, March 25, 2016

21                          * * * * * * *

22
                   REPORTER: RICHARD H. ROMANOW, RPR
23                        Official Court Reporter
                       United States District Court
24         One Courthouse Way, Room 5510, Boston, MA 02210
                         bulldog@richromanow.com

25

```
 1                    A P P E A R A N C E S

 2

 3    DAVID G. TOBIN, ESQ.
      JORDI deLLANO, ESQ.
 4        United States Attorney's Office
          J. Joseph Moakley U.S. Courthouse
 5        1 Courthouse Way, Suite 9200
          Boston, Massachusetts 02210
 6        (617) 748-3965
          Email: David.tobin@usdoj.gov
 7        For the United States

 8

 9    J.W. CARNEY, ESQ.
          J.W. Carney, Jr. & Associates
10        20 Park Plaza, Suite 1405
          Boston, Massachusetts 02216
11        (617) 933-0350
          Email: Jcarney@carneydefense.com
12        For the defendant

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1           P R O C E E D I N G S

2           (Begins, 2:05 p.m.)

3           THE CLERK:  This is Criminal Matter Number

4    15-10271, the United States versus Alex Levin.

5           THE COURT:  And again would counsel identify

6    themselves.

7           MR. TOBIN:  Again, good afternoon, your Honor,

8    David Tobin on behalf of the United States and I'm

9    joined today by Jordi deLlano of the United States

10   Attorney's Office.

11          MR. deLLANO:  Good afternoon, your Honor.

12          THE COURT:  Good afternoon.

13          MR. CARNEY:  Good afternoon, your Honor, I'm J.W.

14   Carney, Jr., and with me -- well, before I say who's

15   with me, I'm proud to say that I became a member of this

16   court in 1979.  My colleague, Nate Dilbert Silver, was

17   admitted to this court last week and today is his first

18   appearance.

19          THE COURT:  Well, you are certainly welcome, sir.

20          MR. SILVER:  Thank you, your Honor.

21          THE COURT:  I am proud to say I became a member of

22   this court 11 years prior to you, Mr. Carney.

23          All right.  But you're both welcome and I see

24   Mr. Levin is here.

25          THE COURT:  I think the substantive argument here

1   ought not take more than maybe 20, 25 minutes, but I

2   have a question first for Mr. Tobin, but I want to let

3   Mr. Carney or his colleague develop their arguments.

4        You, without seeking permission of Court, filed an

5   overlong brief and you filed it under seal, and the

6   under seal is what surprises me.

7        Why did you file your memorandum under seal?

8        MR. TOBIN:  I had to, your Honor, because the

9   motion to suppress was filed under seal.  I attempted to

10  file my response in the normal course through PACER, but

11  as you may know, when you try to do that they marry you

12  up to the motion to which you are responding to, and it

13  wasn't posted.

14       THE COURT:  I appreciate that.

15       MR. TOBIN:  And with regard to the overlong, I do

16  apologize, I did simultaneously file --

17       THE COURT:  No, no, I know you did and I denied

18  it.  That wasn't my question.  It was the under seal.

19       MR. TOBIN:  Oh, Oh, oh, I'm sorry.  I didn't see

20  that.

21       THE COURT:  But I see no reason to keep any of

22  these papers under seal and I'm removing the seal.

23       MR. TOBIN:  Nor do I.

24       THE COURT:  Very well.

25       Let's turn to Mr. Carney.

1          Mr. Carney, this is a very significant motion in

2    the Court's eyes.  I think you have rather the better of

3    it, though I very much want to hear Mr. Tobin, on the

4    issue of was the rule violated, um, and did the

5    magistrate judge act beyond his jurisdiction, so far as

6    the rule goes, and you have the better of it on the

7    issue of prejudice, the witness, Mr. Levin, is presently

8    in custody.

9          I must tell you, I don't see a basis for

10   suppression.  I'm groping for something less than

11   suppression.  If there's any suggestion, though I

12   haven't been able to come up with one?  I wrestle with

13   the good faith exception, that's where my mind is.  I

14   very much want to hear your argument.

15        MR. CARNEY:  Would the Court permit me to give an

16   introductory statement?

17        THE COURT:  Yes, go ahead.

18        MR. CARNEY:  That may be beneficial to persons who

19   are in the courtroom so that they can put it in context.

20        THE COURT:  Fine, but understand we're not going

21   more than 10 minutes here.  So go ahead.

22        MR. CARNEY:  In February of 2015, federal

23   authorities obtained a server that contained a large

24   amount of child pornography.  The server was brought to

25   the Commonwealth of Virginia.  The server was often

1    contacted by computers using a T-O-R network that

2    preserved the unanimity of the IP address of the

3    computer that was now connecting to the server.  The

4    government continued that server to operate but

5    installed malware on the computer that allowed the

6    malware to be sent from the server in Virginia to the

7    computer that was connecting to the server.  The malware

8    then identified the IP address of the computer and sent

9    that information to the server, and by having the IP

10   address, federal authorities were able to identify the

11   location now of where the computer was located.  They

12   obtained a search warrant from this court, the search

13   warrant was executed at my client's home, and his

14   computer was seized.

15        The question before the Court, as your Honor has

16   focused with laser-like authority is what is the remedy

17   if that search warrant that allowed the malware put on

18   the server in Virginia to search a computer in

19   Massachusetts was illegal?

20        Rule 41 of the Federal Rules of Criminal Procedure

21   limits the issuance of a search warrant to the judicial

22   district in which the judge is located.  The Federal

23   Magistrate's Act is also applicable because the search

24   warrant, in this case, was issued by a magistrate judge

25   located in Virginia and the Magistrate's Act states that

1    a magistrate judge may only issue a search warrant that

2    is to be executed within that judicial district.  There

3    are exceptions that are inapplicable.

4         So that what happened here is that the Virginia

5    magistrate judge issued a warrant that allowed the

6    government to search a Massachusetts computer.  This

7    cannot be termed a "mere technicality," "a technical

8    violation of the rules" or a "ministerial violation,"

9    that they were supposed to return something by a

10   particular day and then they returned it the next day.

11        THE COURT:  But why should suppression result?

12   Let's say arguendo I'm completely with you that far,

13   what we have here is older rules that don't mesh well

14   with the present day digital reality and we need an

15   amendment to the rules, but what happened has happened

16   under the present framework, and I'm not king of the

17   world, I can't change the rules.  So the rules are what

18   they are, they appear to have been violated, but why

19   should suppression follow in this case?

20        It's very hard to see what the FBI could have

21   done.  Maybe you can suggest it to me.  What could they

22   have done to get authorization for Warrant Number 2, the

23   one you're challenging?

24        MR. CARNEY:  What they could have done, and which

25   they did do, was bring this problem to the attention of

1   the Department of Justice and indeed a presentation was

2   made by the Department of Justice to the Congress and

3   said, "We need to change the rules," and they submitted

4   an amendment to Rule 41 that would cover this precise

5   situation, which is what should happen if the Congress

6   agrees, but that amendment to the rule is not a

7   guaranteed change, it's receiving opposition from more

8   than just criminal defense counsel, but from such large

9   entities as Google, and they're pointing out why this

10  rule should not be changed.

11       Why should suppression be ordered here?  It's a

12  question of respect for the separation of powers, I

13  submit, a subject on which I've heard your Honor speak

14  many times.  We have a rule of the judiciary, the U.S.

15  Supreme Court rule of Criminal Procedure 41, which must

16  be honored by the executive.  We have a statute, the

17  Federal Magistrate's Act, where the Congress explicitly

18  said a magistrate judge can only issue a warrant that

19  can be executed within the judicial district.  Times

20  have changed.  Just like every instance where a rule or

21  statute is changed is a reflection of its time.  But

22  when this warrant was sought, the agent had to know that

23  it would be searching computers located outside the

24  judicial district.  So it's not an accidental violation

25  of the law, it's a direct violation of the rule and the

statute.

It becomes therefore a jurisdictional issue.  If
the Congress passes a statute that essentially says to a
magistrate judge, "You may not issue a warrant that
encompasses a nation-wide search, we are cabining what
you can do to a search in your district," and that's
what the Congress stated, and the magistrate judge
nonetheless issues a warrant that can be executed in all
50 states, that is such a direct violation of a
Congressional intent as manifested by the explicit
wording of the statute, and that, as one judge said, "is
no warrant at all."

Because if we're not going to pay attention to the
law as currently written and the rules as currently
written, then what meaning do they have?  The
Constitution puts limits on searches, but the Congress
has a right to as well, and a court, in imposing a rule
of criminal procedure, has a right to do so as well.
And even if it's true, the law should be changed and it
needs to catch up.  If we say that the law should be
changed before it even is changed, then we're ignoring
the rules of jurisdiction that are so important.

THE COURT:  Recognizing the force of your
argument, there is no authority persuasive or otherwise,
so far as I have searched, where suppression has

1  resulted.  I mean there have been challenges to this

2  very warrant, but it has not resulted in suppression.

3       MR. CARNEY:  I've never encountered an instance

4  where this court has shide away from being the first to

5  enter an order that no other judge has seen fit to

6  issue.

7       THE COURT:  All right.

8       MR. CARNEY:  And I'm asking your Honor to do so

9  here.

10       THE COURT:  Thank you.

11       MR. CARNEY:  Thank you, your Honor.

12       THE COURT:  Mr. Tobin.

13       MR. TOBIN:  Your Honor, Mr. Carney indicated that

14  the executive branch must follow Rule 41, that obviously

15  is the case, but his real challenge is against the power

16  and the authority of the federal courts to issue

17  warrants.  The judge in the *Michaud* case, in one of the

18  districts in Washington, found that independent and

19  separate from Rule 41 was a common law right of the

20  federal judiciary to issue warrants.

21       THE COURT:  How can you seriously argue that where

22  there is specific prescribed authority granted to the

23  magistrate judge?  We're not talking about interstitial

24  necessity here.  No one doubts that there's a common law

25  authority.  But that common law authority is prescribed

1    when you have rules that have the force of law.  The

2    rule's been violated here.

3         You don't seriously suggest it has not?

4         MR. TOBIN:  The Department of Justice's position

5    is the application of the use of the NIT in this

6    instance, on this website, under these circumstances,

7    does not violate Rule 41.  I understand that is a losing

8    argument, certainly with this learned judge, so I'm not

9    going to sit here and waste your time espousing it.

10        THE COURT:  Well, I was saying arguendo it seems

11   to me to be a losing argument, but, you know, my mind is

12   open.

13        MR. TOBIN:  Of course it is.

14        The position of the Department of Justice is that

15   in this situation, under these circumstances, the rule

16   is not violated because, in this instance, as in every

17   one of these -- the cases from this episode of this

18   operation, the defendant chose to intentionally enter

19   the Eastern District of Virginia, he pierced the state

20   boundary, he went into Virginia, he accessed a child

21   pornography website, he pulled things --

22        THE COURT:  That's not where the search took

23   place, the search we're talking about took place when

24   the malware was extracted from his Massachusetts

25   computer, the various data.

1    MR. TOBIN:  Which the defendant knowingly and

2    intentionally brought from Virginia back to -- he

3    brought content from Virginia back to Massachusetts.

4    THE COURT:  And you think that fits the language

5    here?

6    MR. TOBIN:  What he also brought back, unknowing

7    to him, was this malware.  And so that's the

8    government's argument in that respect.

9    One of the judges also found that there's no

10   Fourth Amendment reasonable expectation of privacy in

11   his IP address because it's so readily available to

12   those in the computer world that he has no reasonable

13   expectation of privacy.  I bring that to your attention

14   only because I read it in one of your fellow judge's

15   decisions.  But I don't think that's going to work

16   either.  But I'm just bringing it, I'm highlighting what

17   --

18   THE COURT:  Well, you're certainly prescient,

19   Mr. Tobin, I -- at least as I sit here, I don't think

20   that's going to work.

21   MR. TOBIN:  I understand, your Honor.

22   THE COURT:  Your strongest argument is --

23   MR. TOBIN:  Please.

24   THE COURT:  -- is -- if you want -- it seems to me

25   your strongest argument is, in this developing area, the

1     agents acted in good faith.

2          MR. TOBIN:  Oh, I agree, Judge, I'm saving the

3     best for last.

4          THE COURT:  Well, in about 5 minutes.  Go ahead.

5          MR. TOBIN:  Okay.  Even less.  Even less.

6          This case is on all fours with *Leon*.  What we have

7     here are law enforcement --

8          THE COURT:  Well, they knew they were violating.

9          MR. TOBIN:  No.

10         THE COURT:  Look, how many of these warrants have

11    issued, N-I-T warrants?

12         MR. TOBIN:  Oh, I suspect -- oh, how many of the

13    NIT warrants have issued in this country?

14         THE COURT:  Yes.

15         MR. TOBIN:  I don't know.  I can tell you that

16    there have been hundreds of cases --

17         THE COURT:  No, how many NIT warrants have issued?

18    You don't know?

19         MR. TOBIN:  I don't know, Judge.

20         THE COURT:  I want to know because I think it goes

21    to the good faith.

22         MR. TOBIN:  Okay.

23         THE COURT:  I'll give you a week.  I don't need to

24    know the details, they're a matter of no moment.  I want

25    to know how many warrants, when they were issued, the

1    dates they were issued, and the judicial officers who

2    issued them.  That's all I need to know.

3              MR. TOBIN:  One other thing, if I might, Judge?

4              THE COURT:  Yes.

5              MR. TOBIN:  You pointed out very accurately that

6    at least for this NIT in this case, other judges have

7    had the opportunity to wrestle with this issue and none

8    of them have suppressed the evidence that I'm aware of

9    and I have looked.

10             THE COURT:  And so have I and that's correct.

11             MR. TOBIN:  And I do believe you're absolutely

12   correct that the government's best evidence is good

13   faith.  And the only thing where perhaps I would

14   respectfully disagree is I don't believe that the

15   officers that were administering this and sending out

16   the NIT and gathering the information had anything but

17   good faith, they didn't know this was illegal, the

18   Department of Justice believed it was accurate.

19             THE COURT:  Really?  It's difficult for this Court

20   to believe that against the clear language of the rule

21   and the Magistrate's Act, that they could not have

22   known, the best that can be said -- and there's a Fifth

23   Circuit case, not with respect to Rule 41, but that's

24   right on point, when the officers know the rule, whether

25   or not they think it's enforceable, then it's not good

1   faith if they go ahead and violate it.

2          MR. TOBIN:  But, Judge, here we have two

3   magistrate judges, two learned members of the court, who

4   gave this its blessing.  The officers could certainly

5   look at that.

6          THE COURT:  What -- tell me this.

7          MR. TOBIN:  Of course.

8          THE COURT:  If I were to rule that this is a

9   violation --

10         MR. TOBIN:  Yes, sir.

11         THE COURT:  -- what's the limiting principle then

12  on your argument of good faith?  He had no jurisdiction.

13  If I were so to rule.

14         The magistrate judge has no jurisdiction to issue

15  this nation-wide search warrant.

16         MR. TOBIN:  Of course.

17         THE COURT:  Let's say that's this Court's ruling.

18         MR. TOBIN:  Okay.

19         THE COURT:  Just assume that.  If that's this

20  Court's ruling, then how can it be that good faith will

21  save a warrant that he had no authority to issue?  If I

22  went for that.

23         MR. TOBIN:  Of course.

24         THE COURT:  If I don't enforce the rule, then

25  where do I stop?

1        MR. TOBIN:  But as I understand it, the good faith

2    exception, you look at the -- you look at the magistrate

3    judge's -- and there's no way around this, but you look

4    at them to essentially see, um, you know -- I won't use

5    the word "colorable" because the case law doesn't use

6    that, but the officers were looking at the magistrate,

7    and the issue isn't what the magistrate thought, I would

8    respectfully submit, but it was what did the officers at

9    that time believe?  They had warrants from two respected

10   members of the judiciary authorizing them to do this,

11   were they supposed to secondguess them and say, "Oh, I'm

12   sorry, we can't do this"?

13       THE COURT:  It's not like the officers are acting

14   alone, this is a program of the FBI.  You're -- and

15   that's why I want to know how many of these warrants

16   have issued.  And it seems pretty clear to me that in

17   the Justice Department this matter has been analyzed,

18   they've brought it to the attention of Congress, they

19   know very well that they're on very shaky ground here,

20   that's what makes this case so difficult.

21       MR. TOBIN:  No, I understand your point, it's

22   clear and I'm reading it, but I should say one point

23   though.  According to -- the Department of Justice's

24   position is they are seeking a change to Rule 41 not

25   because they believe that these NITs violated, but

1    because one judge -- many judges accepted it, but one

2    judge found that this was a problem, and so they then

3    proposed this.  I put that in my --

4           THE COURT:  All right.

5           MR. TOBIN:  I thank you for the time.

6           THE COURT:  Thank you.

7           MR. TOBIN:  Oh, could I ask one question about

8    your order just so I can do what the Court is looking

9    for?

10          You're looking for how many NITs have been

11   authorized by judges across the United States?

12          THE COURT:  Correct.

13          MR. TOBIN:  Is there a period of time by which you

14   --

15          THE COURT:  No, I want to know how many -- how

16   many?

17          MR. TOBIN:  Okay.

18          THE COURT:  What judges?  And the dates?

19          MR. TOBIN:  Yes, your Honor.

20          THE COURT:  And nothing else.

21          MR. TOBIN:  Yes, your Honor, I will endeavor to

22   find that for you.

23          THE COURT:  I give you a week to do that.

24          MR. TOBIN:  Thank you, your Honor.

25          THE COURT:  I think I've -- I've read everything

1   with care, it would be improvident to rule, but having

2   said that I -- I speak now because I think it will be

3   helpful, I'm not asking for any further briefing, um, I

4   -- but I'm going to say what's on my mind.

5        It appears to me the rule has been violated.  It

6   appears to me that the violation has caused prejudice to

7   Mr. Levin.  I don't know how I come out on good faith.

8   I am hesitant because I -- it's difficult to know what

9   the officers could have done if they were going to use

10  this type of malware which seems, as I sit here, to be

11  an appropriate way to go about law enforcement.  I do

12  believe that the rule ought to be amended, the statute

13  ought be amended, but we take the law as it is now.

14       Now under the Speedy Trial Act I get 30 days to

15  render my opinion and I will render it.  If it comes out

16  -- I can see of various ways that it can come out.  If

17  it -- were I to suppress it, we all know -- you all know

18  what your rights are.

19       MR. TOBIN:  Uh-huh.

20       THE COURT:  If I don't suppress it, it's fairly

21  clear to me that I will be put to the task of writing an

22  opinion that says many of the things I have just said

23  and having declared them, in no uncertain terms, it's

24  extraordinarily unlikely that I would ever issue, ever

25  uphold one of these type warrants again.

1        MR. TOBIN:  I understand, your Honor.

2        THE COURT:  I hope you do.

3        MR. TOBIN:  I do.

4        THE COURT:  So we've got 30 days.  I'd be

5    interested to see -- it seems to me that if the

6    Department of Justice is serious about this, they can

7    get an amendment.  It doesn't seem to me to be a

8    clarifying amendment.  They can get an amendment.  But

9    I'll take the matter under advisement.

10       Now while we're still here, I have my 2:30,

11   Mr. Carney quite properly and appropriately has brought

12   his appeal really from the determination of Magistrate

13   Judge Bowler and I will hear you, Mr. Carney, again.

14       I've read all the papers on this.  My reaction is

15   that Magistrate Judge Bowler has been most careful, she

16   always is, and of course the denial is without

17   prejudice.  She commends you for your efforts on

18   Mr. Levin's behalf.

19       How likely is it that you could find him a place

20   acceptable, I won't say to her, but the terms she's

21   looking for are clear.  How likely is it that you can

22   find such a place?

23       MR. CARNEY:  Unlikely, your Honor.  If I may just

24   add something orally?

25       THE COURT:  Not on the substance.  I've heard

1   enough and I've stuck to that.  You can file something

2   further, because I am going to be wrestling with this,

3   but on the issue --

4        MR. CARNEY:  Just a clarifying point that the

5   Court may find helpful.

6        THE COURT:  Go ahead.

7        MR. CARNEY:  I was not the first counsel who

8   represented Mr. Levin, he was appointed a new lawyer at

9   the Federal Defender Office who proposed that Mr. Levin

10  be placed in the custody of a third-party custodian,

11  specifically his brother.  The probation department

12  found that the brother was inappropriate as a third-

13  party custodian because he lived in an area where there

14  were children who lived nearby.  And then we tried to

15  put him with his parents, well, they're with elderly

16  people.

17       The problem that I've had is that I never would

18  have proposed a third-party custodian for a United

19  States citizen who's 49 years old, with no prior

20  criminal record, gainfully employed, graduated from high

21  school in Worcester in 1984, then got a college degree,

22  then got a master's degree, he's got a daughter who's in

23  the area, and that's where the flaw is, he doesn't need

24  a third-party custodian and I've never seen a third-

25  party custodian for a situation like this.  And as long

1   as probation is going to say, "Oh, if there are children

2   in the area who live in the next building, that's not an

3   appropriate place," or "There's a bicycle seen on a back

4   porch so this isn't an appropriate place," then I'm

5   never going to find anyone.

6         So then if the Court did not require -- if the

7   Court ruled that a third-party custodian is not required

8   and remanded it to Judge Bowler for reconsideration,

9   that would be quite satisfactory to the defendant.

10  Thank you.

11         THE COURT:  When is the case on for trial?

12         MR. CARNEY:  We just moved it, your Honor, because

13  of this motion hearing.  I believe it's in June.

14         MR. TOBIN:  Mid june.

15         MR. CARNEY:  Mid June, your Honor, was the

16  earliest date that was available.

17         THE COURT:  All right.

18         MR. TOBIN:  Your Honor, although we are not

19  opposed, that we can envision a situation in which

20  conditions can be set where a defendant or this

21  defendant can be released, we very much believe it is

22  appropriate for a third-party custodian.  We fully

23  support the decision of Magistrate Judge Bowler.  And if

24  Mr. Carney can come forward with another suggestion, the

25  government is happy to look at that with a fresh eye, as

1    I'm sure Judge Bowler would.

2        THE COURT:  I'm going to leave the terms and

3    conditions of his confinement in place with the

4    following exception.  If this Court grants the motion to

5    suppress, I'll hold, um -- the case will be immediately

6    remanded to Judge Bowler for further consideration.

7    It's not unlikely that if I were to do that, the

8    government would appeal, as is their right, and that

9    would cause delay and he would be incarcerated then for

10   a longer period of time and that ought be considered.

11   On the other hand, if I don't suppress it, I expect

12   we'll go to trial promptly and I'm satisfied, since she

13   has left it open as she has, with the current terms and

14   conditions.  That's the ruling of the Court.

15       MR. TOBIN:  Thank you, your Honor.

16       MR. CARNEY:  Thank you.

17       (Pause.)

18       THE COURT:  Yeah, he's remanded to the custody of

19   the marshals.

20       (Ends, 2:45 p.m.)

21

22

23

24

25

1                    C E R T I F I C A T E

2

3          I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

4    do hereby certify that the foregoing record is a true

5    and accurate transcription of my stenographic notes

6    before Judge William G. Young, on Friday, March 25,

7    2016, to the best of my skill and ability.

8

9

10   /s/ Richard H. Romanow 04-25-16
     _____
11   RICHARD H. ROMANOW  Date

12

13

14

15

16

17

18

19

20

21

22

23

24

25