UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

    v.

ALEX LEVIN,
         Defendant

Criminal No. 15-CR-10271-WGY

**GOVERNMENT'S MOTION FOR RECONSIDERATION
OF THE COURT'S ORDER SUPPRESSING EVIDENCE**

The United States respectfully moves this Court to reconsider its April 20, 2016 Order (D.69) granting the defendant's motion to suppress evidence (D.44). *United States v. Bravo–Fernandez*, 790 F.3d 41, 61 n. 14 (1st Cir. 2015) ("[D]istrict courts have the inherent authority to reconsider their interlocutory orders outside the sentencing context."). Reconsideration is warranted because the Court's finding that the NIT Warrant was void *ab initio*—and thus the good-faith exception was inapplicable—was manifestly erroneous, and the exclusion of evidence obtained pursuant to the NIT Warrant is clearly unjust.

**I.  The NIT Warrant was not void *ab initio*.**

The Court's threshold determination that the NIT Warrant was void from the outset because the magistrate judge was without authority to issue it is incorrect. *First*, even assuming, without conceding, that Rule 41 did not permit the magistrate judge to issue a warrant for the search of activating computers located in other federal districts, the warrant was not wholly void because Rule 41 plainly authorized the magistrate judge to issue the NIT Warrant for the search of activating computers located within the Eastern District of Virginia and within a territory, possession, or commonwealth of the United States and

diplomatic or consular premises and residences of the United States located in foreign states. *See* Fed. R. Crim. P. 41(b)(1) and (5). *Second*, the Rule 41 violation that the Court found to have occurred in this case—essentially, that the government obtained authorization for the NIT Warrant from the wrong judge in the right district—does not implicate the Fourth Amendment and therefore does not render the warrant utterly void without regard to whether the defendant suffered prejudice. For both of these reasons, the Court's finding that the NIT Warrant was void *ab initio* must be reconsidered.

        **A.**     **The magistrate judge was authorized to issue the NIT Warrant.**

As argued in its opposition to the defendant's motion to suppress, the government maintains that the magistrate judge was authorized pursuant to 28 U.S.C. §636(a) and Rule 41(b) to issue the NIT Warrant to search for activating computers, wherever located, that accessed Website A to view, download, and distribute child pornography. However, even accepting for the purposes of this motion the Court's finding that §636(a) and Rule 41(b) did not permit the magistrate judge to issue a warrant for the search of activating computers that were located in other districts, the Court's finding that the magistrate judge was wholly without authority to approve the NIT Warrant is erroneous. In fact, Rule 41(b) permitted the magistrate judge, at a minimum, to issue the NIT Warrant for the search of activating computers located within the Eastern District of Virginia and within the territorial and diplomatic areas listed in subsection (5). Since the magistrate judge acted well within her authority to approve the search warrant for these locations, it cannot be said that "there simply was no judicial approval" for the warrant. D.69 at 18.

As a threshold matter, the NIT Warrant satisfied the Fourth Amendment's warrant requirements in all respects. It appears undisputed that the NIT Warrant application

established probable cause to search the activating computers of users who intentionally logged on to the Target Website to view, download, and disseminate child pornography. There also is no dispute that the warrant application particularly described the things to be seized. And while the defendant argued that the application did not describe the place to be searched with sufficient particularity, this Court correctly noted, without deciding, that at least two courts have held that "*this precise warrant* was sufficiently particular to pass constitutional muster." D.69 at 38 (emphasis in original). Nor has there been any claim that the magistrate judge to whom the warrant was presented was not "neutral and detached," as required to ensure the protections afforded by the Fourth Amendment, *Johnson v. United States*, 333 U.S. 10, 14 (1948), or was not duly appointed and authorized to perform all of the functions of a United States magistrate judge in the Eastern District of Virginia. *See* 28 U.S.C. §636.

Under these circumstances, the magistrate judge was clearly authorized, at a minimum, pursuant to §636(a)(1) and Rule 41(b)(1) and (5) to issue the NIT Warrant, which satisfied the Fourth Amendment's probable cause and particularity requirements, for the search of activating computers in the Eastern District of Virginia and United States' territories and diplomatic locations. Since the magistrate judge was permitted by statute and rule to issue the constitutional NIT Warrant for searches within her jurisdiction, the Court's finding that she had no authority to issue the warrant is unsound. That the NIT Warrant could have been—and in fact was, *see*, *e.g.*, *United States v. Darby*, No. 16-CR-36 (defendant charged with possession of child pornography after deployment of NIT to computer located in the Eastern District of Virginia identified him as a user of Website A)—validly executed in the Eastern District of Virginia distinguishes this case from *United States v. Krueger*, 809

F.3d 1109 (10th Cir. 2015), and *United States v. Glover*, 736 F.3d 509 (D.C. Cir. 2013), which the Court relied upon to find the NIT Warrant void *ab initio*.

In both *Krueger* and *Glover*, the warrant applications presented to the judge for approval made clear that the place to be searched was not within the authorizing judge's district. *Krueger*, 809 F.3d at 1111 (warrant presented to magistrate judge in the District of Kansas asked for permission to search home and vehicle located in Oklahoma); *Glover*, 736 F.3d at 510 (warrant presented to district court judge in the District of Columbia asked for permission to install tracking device on vehicle located in Maryland). As a consequence, the courts concluded that the warrants were invalid at the time they were issued because the territorial limitations of Rule 41 (and in *Glover*, of Title III) did not authorize the judges to issue warrants for searches in other districts. *Krueger*, 809 F.3d at 1116-17, 1118 (Gorsuch, J., concurring); *Glover*, 736 F.3d at 515. Here, in contrast, the NIT Warrant application presented to the magistrate judge asked for permission to search the activating computers— "wherever located"—that accessed the Website A server located in the Eastern District of Virginia. Unlike the warrants in *Krueger* and *Glover*, the NIT Warrant did not specify that the search would occur only outside of the Eastern District of Virginia, and since the warrant also contemplated a search within the authorizing judge's district, it was presumptively valid at the time it was issued. *Cf. United States v. Moreno-Magana*, No. 15-CR-40058-DDC, 2016 WL 409227, at *14-15 (D. Kan. Feb. 3, 2016) (distinguishing *Krueger* and rejecting claim that warrant issued by Kansas state court judge to search phone was void *ab initio* because, at time warrant was issued, precise location of phone was unknown; thus, unlike in *Krueger*, where both law enforcement and issuing magistrate knew that the property to be searched was not within the magistrate's district at time warrant was issued,

"[t]he warrants here did not authorize pinging of phones that the issuing judge knew to be outside Kansas"). The Court should therefore reconsider its finding that the magistrate judge was without any legal authority to issue the NIT Warrant.

      **B.    A Rule 41 violation does not require suppression without proof of prejudice.**

The Court's finding that the Rule 41 violation in this case was "substantive" and therefore required suppression without regard to whether the defendant suffered prejudice must likewise be reconsidered.

*First*, for the reasons just discussed, the magistrate judge was authorized, at a minimum, to issue the NIT Warrant for searches within her district; at most, the magistrate judge overstepped the geographic boundaries of Rule 41 to the extent the warrant authorized searches of activating computers in other districts. A finding that she exceeded her power does not mean that she never had the power to issue the warrant, and thus does not mean that "there simply was no judicial approval." D.69 at 18.

*Second*, the Court's characterization of the Rule 41 violation as "jurisdictional" belies the true nature of what occurred. Armed with a constitutionally valid application for a search warrant, law enforcement agents presented it to a magistrate judge who they reasonably believed had authority to issue the warrant. Although this Court has now ruled that the magistrate judge violated Rule 41, insofar as she authorized searches for computers located outside the Eastern District of Virginia, the error was not one of constitutional dimension. The decision to present the facially valid warrant application to a magistrate judge, rather than, as the Court suggested, a district court judge in the same district, even if erroneous, *see* D.69 at 22 n.15 & 35-36, did not affect the validity of the NIT Warrant under the Fourth Amendment, and numerous courts have held that similar presentment errors,

5

resulting in a warrant being approved by a judge who technically lacks authority under Rule 41 to issue the warrant, do not require suppression of evidence without a showing of prejudice. *See, e.g., United States v. Michaud*, No. 3:15-CR-05351-RJB, 2016 WL 337263, at *5-7 (W.D. Wash. Jan. 28, 2016) (rejecting claim that very same NIT Warrant issued in this case required suppression due to Rule 41 violation and finding that violation was merely technical and defendant could not establish prejudice); *United States v. Stamper,* No. 15-CR-109 (MRB), D.48 at 21-23 (S.D.Oh. Feb. 19, 2016) (same); *United States v. Epich*, No. 15-CR-163-PP, 2016 WL 953269, at *2 (E.D. Wis. Mar. 14, 2016) (discussing same NIT Warrant issued in this case and noting that, even if violation of Rule 41 occurred, it did not require suppression); *United States v. Hernandez*, No. 08-198(1) (JRT/RLE), 2008 WL 4748576, at *15-16 (D. Minn. Oct. 28, 2008) (finding issuance of constitutionally valid warrant by Minnesota state court judge for search of bank located in South Dakota to be technical violation that did not require suppression because defendant was not prejudiced); *United States v. Vann*, No. 07-CR-247 (JMR/RLE), 2007 WL 4321969, at *22-23 (D. Minn. Dec. 6, 2007) (similar, where warrant issued by federal magistrate judge in the District of Minnesota for search of property in the Western District of Wisconsin); *United States v. LaFountain*, 252 F. Supp. 2d 883, 891 (D.N.D. 2003) (similar, where warrants issued by tribal court judge). As these cases make clear, violations of Rule 41(b), just like violations of Rule 41's other prerequisites, do not automatically require suppression without a showing of prejudice to the defendant. *See United States v. Burgos-Montes*, 786 F.3d 92, 108-09 (1st Cir. 2015), *cert. denied*, 136 S. Ct. 599 (2015) (finding that Rule 41(f)(1)(C) violation does not require suppression absent a showing of prejudice and noting that "[o]ther circuits have held the same applies to all the prerequisites of Rule 41") (citing *United States v. Schoenheit,* 856

F.2d 74, 76-77 (8th Cir. 1988), and *United States v. Burke,* 517 F.2d 377, 386-87 (2d Cir. 1975)).

Where, as here, the search warrant satisfies the requirements of the Fourth Amendment, and the only alleged defect is the choice of an incorrect but nevertheless neutral and detached magistrate for approval, rather than the absence of any approval at all, the Rule 41 violation is not "fundamental." *United States v. Luk*, 859 F.2d 667, 670-71 (9th Cir. 1988) (defining Rule 41 violation as "fundamental," and thus requiring suppression, "only where it, in effect, renders the search unconstitutional under traditional fourth amendment standards"); *see also Burke*, 517 F.2d at 386-87 (similar). Thus, contrary to this Court's finding, that the magistrate judge in the Eastern District of Virginia lacked authority to issue the NIT Warrant for searches outside her district—but plainly was authorized to issue the NIT Warrant for searches within her district—was not an error of constitutional magnitude requiring suppression without regard to prejudice. D.69 at 17-18. *See also United States v. Britt*, 959 F.2d 232 (4th Cir. 1992) (unpublished) (per curiam) (even assuming issuance of warrant by state court judge without authority to do so violated Rule 41, "a technical breach of Rule 41, without more, does not mandate suppression of evidence" and since defendant "has not shown that the search violated fourth amendment principles . . . the exclusion of evidence would be inappropriate"). This conclusion is supported by the Court's own recognition that an amendment to Rule 41, which was approved by the Supreme Court on April 28, 2016 and, absent Congressional action will become effective on December 1, 2016, specifically authorizes federal magistrate judges to issue warrants, like the NIT Warrant in this case, for the search of electronic media and information within or outside their districts if the media or information has been concealed through technological

means. *See* D.69 at 20 n.13; Attachment A (April 28, 2016 letter from Chief Justice Roberts to House and Senate leaders submitting approved amendments to the Federal Rules of Criminal Procedure to Congress). This amendment to the so-called "substantive judicial authority" of the magistrate judge demonstrates that it, like "the procedures for obtaining and issuing warrants," derives from the same authority and stands on equal footing with every other prerequisite of Rule 41. There is thus no principled basis for creating a per se exclusionary rule for Rule 41(b) violations.

    **C.**    **The defendant was not prejudiced by any Rule 41 violation and thus is not entitled to suppression.**

The Court should also reconsider its finding that, even if the Rule 41(b) violation that the Court found to have occurred in this case were subject to the prejudice test (as it should be for the reasons just stated), it would fail. The Court correctly acknowledged, but incorrectly rejected, the formulation used by a majority of the courts to have considered the meaning of prejudice in similar contexts. D.69 at 22-24 & n.14. Rather than follow the majority view, which asks "whether the evidence obtained from a warrant that violates Rule 41(b) could have been available by other lawful means," *Michaud*, 2016 WL 337263, at *6 (citing *United States v. Vasser*, 648 F.2d 507, 511 (9th Cir. 1980)), the Court instead adopted the narrow view espoused in *Krueger*, which asks "whether the issuing federal magistrate judge could have complied with the Rule." 809 F.3d at 1116. The Court's formulation, however, "makes no sense, because under that interpretation, all searches executed on the basis of warrants in violation of Rule 41(b) would result in prejudice, no matter how small or technical the error might be. Such an interpretation would defeat the need to analyze prejudice separately from the Rule 41(b) violation." *Michaud*, 2016 WL 337263, at *6. As discussed above, there is no basis to treat Rule 41(b) violations differently from other Rule

8

41 violations—and certainly no basis recognized in this Circuit—and the thus the Court's prejudice formulation, which effectively eliminates the prejudice inquiry altogether by creating a per se rule of suppression for all Rule 41(b) violations, cannot stand.

Here, as in the cases cited above that involved technical Rule 41 (or similar state rule) violations resulting from the issuance of warrants by an unauthorized official, the defendant must show that he was prejudiced in the sense that he was "subjected to a search that might not have occurred or would not have been so abrasive" had Rule 41(b) been followed. *Burgos-Montes*, 786 F.3d at 109 (quoting *United States v. Bonner,* 808 F.2d 864, 869 (1st Cir.1986)). Contrary to the Court's finding, the defendant cannot make that showing in this case. The defendant's prejudice argument boils down to an assertion that, because he intentionally employed anonymizing technology to perpetrate his crimes against children in the shadows of the dark web, Rule 41(b) prohibits law enforcement from obtaining a warrant authorizing its use of the NIT to identify and locate him. That is not the sort of claimed "prejudice" that should result in suppression.

The NIT Warrant satisfied the Fourth Amendment's probable cause and particularity requirements and thus, according to the Court's analysis, had it been presented to a district court judge in the Eastern District of Virginia, it would have properly issued, and the defendant's computer would have been searched in exactly the same manner as it was. *See* D.69 at 22 n.15; *see also*, *e.g.*, *United States v. Cottom*, No. 13-CR-108-JFB (D. Neb.) (NIT warrant issued in the District of Nebraska for search of computers, ultimately located in districts across country, accessing target child pornography website through Tor network). Likewise, had the NIT Warrant been presented to a federal magistrate judge in the District of Massachusetts, Rule 41 clearly would have authorized the very same search

9

of the defendant's computer that occurred. *See, e.g., Vann*, 2007 WL 4321969, at \*23 ("[T]he presence of probable cause for the issuance of the Warrant adequately demonstrates that the same Warrant would have been issued by a Magistrate Judge in the Western District of Wisconsin, if it had been presented for that Judge's review."); *Hernandez*, 2008 WL 4748576, at \*16 (same, involving issuance of warrant by state court judge without jurisdiction); *LaFountain*, 252 F. Supp. 2d at 891 (same, involving issuance of warrant by tribal court judge without jurisdiction).

Moreover, although it would have been difficult for the government to identify the defendant's IP address—the most significant information gathered by deployment of the NIT—without the NIT Warrant, the IP address was public information in which the defendant had no reasonable expectation of privacy and thus it was obtainable by other lawful means. *Michaud*, 2016 WL 337263, at \*7. *Cf. United States v. Welch*, 811 F.3d 275, 281 (8th Cir. 2016) (finding no prejudice to defendant from violation of Rule 41's notice provision because, had Rule 41 been followed, same search would have occurred and same evidence recovered). In short, had the Court applied the proper standard for evaluating prejudice resulting from the Rule 41(b) violation, the record makes manifest that the defendant did not suffer prejudice and that suppression was not an appropriate remedy.

**II.   The good-faith exception precludes suppression of evidence in this case.**

Even assuming, without conceding, that the warrant was void at the outset, suppression is not warranted. The Court committed two errors in analyzing whether the evidence obtained pursuant to the NIT Warrant should be suppressed, notwithstanding the government's apparent good-faith reliance on the now-invalidated warrant. *First*, the Court erroneously concluded that the good-faith exception was inapplicable here because the

deployment of the NIT was effectively a warrantless search. *Second*, the Court erroneously concluded that it was not objectively reasonable for law enforcement to have relied on the NIT Warrant in executing the search. The record and relevant case law do not support either of those conclusions, and since suppression will serve only to punish law enforcement for a reasonable, if now deemed mistaken, interpretation of Rule 41(b) and will not serve to deter any future violation, the Court should reconsider its conclusion that suppression—a remedy of last resort—is required in this case.

    *First*, as noted above, the warrant was not void *ab initio* because the magistrate judge had authority under both the Federal Magistrates Act and Rule 41(b) to issue the challenged warrant deploying the NIT, at a minimum, within the territorial limits of the Eastern District of Virginia and any possession, territory, or commonwealth of the United States and diplomatic or consular premises and residences of the United States located in foreign states. *See* Fed. R. Crim. P. 41(b)(1) and (5). Even accepting the Court's finding that the NIT Warrant violated Rule 41(b) by permitting a search beyond those geographic boundaries, the error was not one of constitutional magnitude, as it did not vitiate probable cause for the search or render the warrant insufficiently particular. Thus, although the warrant may be "voidable" due to the Rule 41 violation, it does not follow that it is wholly "void" and therefore suppression is automatic. D.69 at 30. Indeed, other courts have refused to suppress evidence obtained from the same NIT Warrant issued in this case, finding that suppression was an inappropriate remedy where the Rule 41(b) violation did not undermine the constitutionality of the warrant and the government's reliance on the warrant was objectively reasonable. *See Michaud*, 2016 WL 337263, at *7; *Stamper*, D.48 at 19-23; *Epich*,

2016 WL 953269, at *2.[1] Other courts have likewise refused to suppress evidence obtained from warrants that were later found invalid due to the issuing judge's lack of authority. *See, e.g., United States v. Master*, 614 F.3d 236, 242-43 (6th Cir. 2010); *Hernandez*, 2008 WL 4748576, at *16-17; *Vann*, 2007 WL 4321969, at *23; *LaFountain*, 252 F. Supp. 2d at 891-92. The analysis in those cases, although not binding on this Court, provides compelling reasons for this Court to reconsider its conclusion that the good-faith exception is inapplicable to this case.

*Second*, the Court's suppression order is inconsistent with the Supreme Court's recent exclusionary rule jurisprudence. The Supreme Court has made clear that "suppression is not an automatic consequence of a Fourth Amendment violation," but instead "turns on the culpability of the police and the potential of exclusion to deter wrongful police misconduct." *Herring v. United States*, 555 U.S. 135, 137 (2009); *Illinois v. Gates*, 462 U.S. 213, 223 (1983) ("The fact that a Fourth Amendment violation occurred—*i.e.*, that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies."). In *Herring*, the Supreme Court refused to suppress evidence obtained from the warrantless search of the defendant's person and vehicle incident to his arrest pursuant to a non-existent arrest warrant. *Id*. at 147. The Court explained that, "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id*. at 144. The Court's emphasis on balancing deterrence and culpability in *Herring* did not mark a

---

[1] *But see United States v. Arterbury*, No. 15-CR-182-JHP, D.47 (N.D. Okla. May 12, 2016) (district court's order adopting recommendation of magistrate judge to suppress evidence obtained from NIT Warrant, relying on the 10th Circuit's decision in *Krueger* (which is controlling authority for the Northern District of Oklahoma) and this Court's ruling in *Levin*).

12

drastic departure from *United States v. Leon*, 468 U.S. 897, 922 (1984), where the Court stated that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion," but it did signal the Court's shift "toward preserving evidence for use in obtaining convictions, even if illegally seized, than toward excluding evidence in order to deter police misconduct unless the officers engage in 'deliberate, reckless, or grossly negligent conduct.'" *Master*, 614 F.3d at 243 (quoting *Herring*, 555 U.S. at 144). "Indeed, exclusion 'has always been our last resort, not the first impulse,' and our precedents establish important principles that constrain application of the exclusionary rule." *Herring*, 555 U.S. at 140 (quoting *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)).

*Herring* makes clear that this Court erred in holding that the good-faith exception does not apply to a search conducted pursuant to a warrant that is void at the outset. D.69 at 24. *Herring* involved the unlawful arrest of an individual pursuant to a warrant that had been rescinded five months earlier. 555 U.S. at 137-38. Although the arrest warrant had no legal force—essentially, it no longer existed—and thus did not authorize the defendant's arrest, the Supreme Court proceeded to consider whether the officers' reliance on the non-existent warrant was objectively reasonable in determining whether evidence obtained from the warrantless search incident to the unlawful arrest should be suppressed. *Id.* at 141-44. Thus, even if this Court adheres to its ruling that the NIT Warrant, like the arrest warrant in *Herring*, was no warrant at all, *Herring* dictates that the suppression is not automatic, and

that the officers' good faith—as well as the deterrent benefits of suppression—must be considered in deciding whether to invoke the exclusionary rule.[2]

Moreover, assuming that the NIT Warrant is not void *ab initio*, which it is not for the reasons discussed above, the exclusionary rule is not an appropriate remedy because the agents relied on the now-invalidated warrant in good faith, and suppression provides no deterrent benefit. There is absolutely no evidence of deliberate, reckless, or grossly negligent conduct on behalf of the law enforcement agents who applied for the NIT Warrant; to the contrary, the warrant application reflects the agents' best efforts to comply with Rule 41(b) by seeking approval for the NIT Warrant in the judicial district where the NIT would be deployed from Website A's server, with which the activating computers voluntarily commicated, and the information it retrieved from the activating computers would be received. Since the location of the activating computers was unknown at the time of NIT deployment, it was not unreasonable for the agents to conclude that the NIT deployment

---

[2] *Herring* also makes clear that the Court's reliance on *United States v. Scott*, 260 F.3d 512 (6th Cir. 2001), is misplaced. D.69 at 27-29. As the Court acknowledges, the Sixth Circuit, relying on *Herring* and other recent Supreme Court cases, later rejected the overly broad interpretation of the exclusionary rule espoused in *Scott*. *Master*, 614 F.3d at 242 ("We do not believe, however, that such a broad interpretation of *Scott* continues to be viable in light of more recent Supreme Court cases."). *Master* represents the Sixth Circuit's more recent, and therefore controlling in that circuit, authority on the proper scope of the exclusionary rule, *id*. at 243 ("the Supreme Court's evolving suppression rulings in Fourth Amendment cases require clarification or modification of our precedent in *Scott*"), and thus *Scott* retains little, if any, persuasive value for this case. The Court should instead adopt the reasoning set forth in *Master*, which, consistent with *Herring*, found the good-faith exception applicable to a warrant the court deemed void *ab initio*—as this Court incorrectly found to be the case here—due to the issuing judge's lack of authority. 614 F.3d at 241-42. After finding that "the issuing magistrate's lack of authority has no impact on police misconduct, if the officers mistakenly, but inadvertently, presented the warrant to an incorrect magistrate," the *Master* court opined that "the costs of excluding the evidence would appear to outweigh any deterrent effect." *Id*. at 242-43 (remanding to district court "for the purposes of re-examining the facts and balancing the interests as required by *Herring*").

and receipt location into which activating computers were communicating—the Eastern District of Virginia—represented the strongest known connection to the criminal activity under investigation. That the agents' compliance efforts were subsequently found insufficient by this Court does not mean that it was objectively unreasonable for the agents to have believed that the NIT Warrant was properly issued, especially "given that reasonable minds can differ as to the degree of Rule 41(b)'s flexibility in uncharted territory." *Michaud*, 2016 WL 337263, at *7.

      Contrary to the Court's finding, the error identified here—the presentation of the NIT Warrant application to what the Court found to be the wrong judge—does not constitute a "systemic error or reckless disregard of constitutional requirements." D.69 at 33-34 (quoting *Herring*, 555 U.S. at 147). *Cf. Heien v. North Carolina*, 135 S. Ct. 530, (2014) (officer's mistaken interpretation of state law that led to traffic stop was objectively reasonable and thus did not require suppression of evidence obtained from search of car). The NIT Warrant itself complies with the Fourth Amendment's probable cause and particularity requirements, and its issuance by a magistrate judge rather than district court judge, while allegedly violative of Rule 41, does not render it unconstitutional. Courts have historically interpreted Rule 41 broadly to allow searches consistent with the Fourth Amendment, particularly in the area of emerging technologies, *see, e.g., United States v. New York Telephone Co.*, 434 U.S. 159, 169-70 (1977) (holding that Rule 41 "is sufficiently flexible to include within its scope electronic intrusions authorized upon a finding of probable cause"), primarily because a flexible interpretation of Rule 41 encourages law enforcement to seek warrants for searches that involve novel investigative techniques, thus promoting the values protected by the Fourth Amendment. *See, e.g., United States v. Torres*, 751 F.2d 875,

880 (7th Cir. 1984). It was therefore objectively reasonable, indeed preferable, for the agents to seek a warrant for the use of the NIT; and it was objectively reasonable for the agents to read Rule 41 as permitting a magistrate judge in the Eastern District of Virginia to issue a warrant to install the NIT on a server in that district that would be activated only after individuals, whose true location they deliberately concealed, voluntarily entered that district to access the server. The agents' and the magistrate judge's belief that Rule 41 authorized the issuance of the NIT warrant, although deemed incorrect by this Court, was therefore objectively reasonable. *Michaud*, 2016 WL 337263, at *7 ("The NIT Warrant did technically violate Rule 41(b), but reasonable, although unavailing, arguments can be made to the contrary."). *See also Massachusetts v. Sheppard*, 468 U.S. 981, 987-88 (1984) (stating that "the exclusionary rule should not be applied when the officer conducting the search acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate," even if that warrant "is subsequently determined to be invalid").

Finally, the Court must consider whether "the benefits of deterrence outweigh the costs." *Herring*, 555 U.S. at 141. This Court acknowledged at the suppression hearing and in its order that "suppression is an extreme remedy," D.69 at 34 n.7, and indeed the costs to society and the justice system of excluding evidence obtained from the NIT Warrant—freeing the defendant from prosecution for his crimes against children—are immense, yet suppression will have absolutely no deterrent effect on future police misconduct. On April 28, 2016, the Supreme Court approved an amendment to Rule 41(b) that clarifies the scope of a magistrate judge's authority to issue warrants, such as the NIT Warrant, to remotely search computers located within or outside the issuing district if the computer's location has been concealed through technological means. *See* Attachment A. Once this amendment

16

becomes effective on December 1, 2016, the Rule 41(b) violation that the Court found to have occurred in this case will never occur again. Applying the exclusionary rule in this case will only punish law enforcement for a past mistake, not deter any future misconduct. *See Herring*, 555 U.S. at 141 (noting that the primary purpose of the exclusionary rule is "deterring Fourth Amendment violations in the future"). Because the "nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion," *Leon*, 468 U.S. at 922, suppression is not warranted here.

**III.    To the extent the deployment of the NIT is considered a warrantless search, it was justified by exigent circumstances.**

If the Court does not reconsider its ruling that the NIT Warrant was void from the outset, the government maintains that the warrantless deployment of the NIT was justified by exigent circumstances and therefore the search was reasonable under the Fourth Amendment. The Supreme Court has recognized that the presumption that warrantless searches are unreasonable "may be overcome in some circumstances because '[t]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). "One well-recognized exception applies when 'the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment.'" *Id.* (quoting *Mincey v. Arizona*, 437 U.S. 385, 394 (1978)). "To show exigent circumstances, the police must reasonably believe that there is such a compelling necessity for immediate action as will not brook the delay of obtaining a warrant." *United States v. Samboy*, 433 F.3d 154, 158 (1st Cir. 2005) (internal quotation marks and citations

omitted). Courts must evaluate "the totality of the circumstances" to determine whether exigencies justified a warrantless search. *Missouri v. McNeely*, 133 S. Ct. 1552, 1559 (2013).

Here, even if the government could not have obtained a warrant for use of the NIT that complied with the letter of Rule 41(b), ample exigent circumstances existed to justify its use. Website A enabled the ongoing sexual abuse and exploitation of children committed by unidentified offenders against unidentified children. Deploying the NIT against Website A's users was necessary to stop the abuse and exploitation and to identify and apprehend the abusers, as well as identify and rescue those children. *See Hegarty v. Somerset Cty.*, 53 F.3d 1367, 1374 (1st Cir. 1995) (exigent circumstances include "a threat, posed by a suspect, to the lives or safety of the public, the police officers, or to herself"). As of early January 2016, use of the NIT in the nationwide investigation of Website A had led to the identification or recovery from abuse of at least 26 child victims. *See Michaud*, No. 15-CR-5351-RJB (D.109 at 8). The FBI also has identified at least 35 individuals who have been determined to be "hands on" child sexual offenders, and at least 17 individuals who have been determined to be producers of child pornography. *Id*. at 7-8. The information the NIT collected was also fleeting. If law enforcement had not collected IP addresses at the time of user communications with Website A, then, due to the site's use of Tor, law enforcement would have been unable to collect identifying information. *See, e.g.*, *Cupp v. Murphy*, 412 U.S. 291, 296 (1973) (affirming use of warrantless search to prevent loss or destruction of "highly evanescent" evidence). Accordingly, if the warrant could not have been issued, then no warrant could have been obtained in a reasonable amount of time to identify perpetrators.

Moreover, the NIT Warrant was minimally invasive and specifically targeted at the fleeting identifying information: it only authorized collection of IP address information and

other basic identifiers for site users. Importantly, the defendant's IP address belonged to his ISP, not to him, and courts have held that a defendant lacks a reasonable expectation of privacy in his IP address. *See*, *e.g.*, *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2007); *Liberty Media Holdings, LLC v. Swarm Sharing Hash File*, 821 F. Supp. 2d 444, 450 n.3 (D. Mass. 2011) (no reasonable expectation of privacy in personal information disclosed to establish account with ISP). Courts also have held that the use of Tor does not alter that premise. *Michaud*, 2016 WL 337263, at *7; *United States v. Farrell*, No. CR15-029RAJ, 2016 WL 705197, at *2 (W.D. Wash. Feb. 23, 2016). Before proceeding with a more invasive entry and search of the defendant's home and electronic devices, the government obtained a Rule 41 warrant issued in this district.

Under the totality of the circumstances—most significantly, the gravity of the imminent and ongoing harm to children victimized and exploited by the users of Website A—the use of the NIT to identify persons like the defendant, who employ anonymizing technologies to perpetrate heinous crimes, was justified by exigent circumstances and therefore reasonable under the Fourth Amendment.

## CONCLUSION

For all of the foregoing reasons, the government respectfully requests that the Court reconsider its order granting the defendant's motion to suppress evidence obtained from the NIT Warrant.

                                        Respectfully submitted,

                                        CARMEN M. ORTIZ
                                        United States Attorney

By:    */s/ David G. Tobin*
        DAVID G. TOBIN
        JORDI DE LLANO
        Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I, David G. Tobin, AUSA, hereby certify that on May 13, 2016, the foregoing document was filed through the Electronic Court Filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                        */s/ David G. Tobin*
                                        DAVID G. TOBIN