# EXHIBIT 4

*United States v. Michaud*,

Transcript of February 17, 2016

Hearing Re: Motion to Compel

```
 1                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
 2                             AT TACOMA

 3

 4   UNITED STATES OF AMERICA,    )  Docket No. CR15-5351RJB
                                  )
 5           Plaintiff,           )  Tacoma, Washington
                                  )
 6   vs.                          )  February 17, 2016
                                  )
 7   JAY MICHAUD,                 )
                                  )
 8           Defendant.           )
     _____)
 9

10
                     TRANSCRIPT OF MOTION HEARING
11            BEFORE THE HONORABLE ROBERT J. BRYAN
             SENIOR UNITED STATES DISTRICT COURT JUDGE
12
     APPEARANCES:
13
     For the Plaintiff:        MATTHEW HAMPTON
14                             Assistant United States Attorney
                               1201 Pacific Avenue, Suite 700
15                             Tacoma, Washington 98402

16                             KEITH BECKER
                               U.S. Department of Justice
17                             1400 New York Avenue NW, 6th Floor
                               Washington, DC 20530
18
     For the Defendant:        COLIN FIEMAN
19                             LINDA SULLIVAN
                               Office of the Public Defender
20                             1331 Broadway, Suite 400
                               Tacoma, Washington 98402
21
     Court Reporter:           Teri Hendrix
22                             Union Station Courthouse, Rm 3130
                               1717 Pacific Avenue
23                             Tacoma, Washington  98402
                               (253) 882-3831
24

25   Proceedings recorded by mechanical stenography, transcript
     produced by Reporter on computer.
```

```
 1                 Wednesday, February 17, 2016 - 9:30 a.m.
 2          (Defendant present.)
 3             THE CLERK:  All rise.  This United States District
 4    Court is now in session, the Honorable Robert J. Bryan
 5    presiding.
 6             THE COURT:  Please be seated.  Good morning.
 7          This is United States versus Jay Michaud, No. 15-5351.  It
 8    is set this morning for hearing on the defendant's third
 9    motion to compel.  The defendant is present with his
10    attorneys, Ms. Sullivan and Mr. Fieman.  And Mr. Becker and
11    Mr. Hampton are here for the government.
12             The first order of business is a surreply.  The government
13    has filed a motion for leave to file a surreply.  I gather the
14    defense objected.
15             MR. FIEMAN:  Yes, Your Honor.  You probably already
16    read it already and we are prepared to address it, so we can
17    note our objection.
18             THE COURT:  I think it is proper to allow it.  So I
19    have signed the order authorizing that.
20          Now, in preparation for this proceeding I have read your
21    briefing, all of it twice, and reviewed some things in the
22    file.  I guess this goes back to the hearing that we had on
23    the 14th of December where I thought this issue was resolved
24    at that time.
25          Mr. Fieman indicated that the government had notified them
```

1   that the government was in fact willing to turn over the NIT

2   code.  The government, in the pleading, filed on the 5th of

3   January, said the government has agreed to provide to the

4   defense and its expert certain information related to a

5   court-authorized Network Investigative Technique.

6       I guess I take it from those two things that you didn't in

7   fact have an agreement to provide all of the code.  Is that

8   what leads to this motion to compel?

9           MR. FIEMAN:  Your Honor, I thought we had an

10  agreement, but apparently we did not have a meeting of the

11  minds.  I don't want to second-guess what the government's

12  understanding was, but I would note I did put on the record at

13  that hearing our understanding, and there was no qualification

14  or comment from the government that we were only going to be

15  getting a fraction of the information.  So I was surprised by

16  the government's position, but they staked it out and I guess

17  we need to move forward.

18          THE COURT:  Yes, okay.

19      Well, it is your motion, Mr. Fieman, so anything you want

20  to add to your briefing.

21          MR. FIEMAN:  Thank you, Your Honor.

22      So Your Honor, I will be brief, but I do want to make a

23  few points, in particular, in response to this surreply.

24      I would like to just start with the basic premise here and

25  Local Criminal Rule 16 which specifically sets the standard at

1   open and early discovery.  As I indicated, I thought we had

2   reached an agreement on the code.

3       The government's objections at this point are a little

4   hard for me to grasp because the code itself, is not a

5   classified document.  They are not claiming there's any

6   classified information in there.  They are not making a

7   national security claim.  There's no confidential informant

8   information.  There's been no claim that disclosing the code

9   would place agents at risk.

10      In fact, I have seen nothing but just sort of a bold

11  assertion of the law enforcement privilege.  But the threshold

12  showing of why there's potential harm, I am still at a loss.

13  They would not have to disclose the code itself in order to

14  explain, in lay person's terms, what the harm would be.

15  That's a separate issue.  So I am still a little bit puzzled

16  by the government's position.

17      Let me just address briefly the surreply.  I understand

18  really there's two points that are made there.  One is that

19  they've offered to give us something called the data stream,

20  which is basically a copy, more or less, of information we've

21  already received that shows Pewter's alleged activities and

22  the data associated with that.

23      When that offer was made, I consulted with both our

24  experts, and frankly their position was this is a red herring;

25  this has nothing to do with the code components that we are

 1   talking about.

 2       For example, the data stream, which is a copy of the data

 3   they've said we've received already is, just to give one

 4   example based on this identifier information that is attached

 5   to it, Mr. Tsyrklevich, on page 3 of his declaration,

 6   explained how this identifier information is frequently

 7   inaccurate and readily corrupted, and therefore giving us the

 8   data stream doesn't address our chain of custody or trial

 9   defense issues whatsoever.  And I explained that to the

10   government.

11       I would also note that Agent Aflin is not a code expert.

12   He's somebody who was involved in the investigation.  And I

13   have not heard or seen anything from the government that

14   directly challenges either Dr. Soghoian's testimony about what

15   the NIT can do to security settings, or Mr. Tsyrklevich's

16   declaration.  I certainly thought that if they were going to

17   file a surreply, that we'd see some contesting of maybe our

18   expert's qualifications or assertions or his security

19   clearance.

20       They seem to have no objection to our expert, and they

21   have not challenged our expert's statements directly.  This

22   data stream issue is indeed a red herring.

23       I would note, Your Honor, also that we've cited *Budziak*,

24   the Ninth Circuit authority, that even if those assurances

25   were taken at face value, we are clearly not required to rely

1    on them.  This is a case that depends almost entirely on data,

2    tracking of data, possession of data.

3         As the Ninth Circuit said in *Budziak*, we cited this in our

4    reply at page 6, access to the software, in this case code, is

5    crucial to a defendant's ability to assess the program and the

6    testimony of agents who build the case against them is

7    obviously relevant and material to the defense.

8         The other surreply point, as I understand it, and really

9    this would be solely if it didn't need to be addressed, but

10   what their point is, that the images that are alleged, in

11   Mr. Michaud's defense, were ultimately found on thumb drives.

12        Well, thumb drives don't connect to the Internet, and

13   images don't drop on to thumb drives out of the air.  The only

14   way data or images get on thumb drives is that if those thumb

15   drives were connected to a computer.

16        So any of the security overrides or virus issues that are

17   clearly going to be essential to our defense pertain to the

18   thumb drives just as much as the hard drive.  They are just

19   simply a different area on the computer that is removable to

20   store information.

21        With all due respect, that is simply not a relevant

22   response to this case.  Again, in *Budziak*, the Ninth Circuit

23   emphasized that the Court itself should not defer to the

24   government's assurances.  Obviously we need to do this

25   independently.

1        So let me get back to what I am trying to understand is

2   the government's problems here.  We agreed to the security

3   procedures that they requested.  We have one expert whose

4   qualifications and discretion they have not challenged, who is

5   willing to view this stuff at a government facility.  So they

6   don't even have to hand him a copy of this stuff.

7        They proposed a protective order which the Court signed

8   off on, that is in place and we do not object to.  And so I am

9   puzzled where the security risk is.  Apart from the fact they

10  haven't shown a harm by disclosing the code to us, there has

11  been no discussion or no recitation to the fact that the

12  measures they requested we've agreed to, and even if there

13  were potential harm, are adequately addressed by what the

14  Court has already issued in the code protective order; it is

15  an independent order.

16       So Your Honor, really what it comes down to is this idea

17  of relevance.  The government itself in its pleading says

18  evidence is material under Rule 16 if it is helpful to a

19  possible defense.

20       In fact, the Ninth Circuit's standard is substantially

21  broader than that.  It is helpful even if they've allowed us

22  to investigate and focus or eliminate potential defenses.  But

23  the government recognizes, I think, that this is relevant.

24  And then the real issue:  Are these security precautions

25  adequate?

1      If the government wants additional precautions, we have

2  invited them to suggest those.  We are not looking to

3  circulate this stuff.  We just need to look at it.

4      Finally, Your Honor, I would point out that I am

5  concerned -- a little bit of a preview we got during the

6  hearing about what I saw as a sword and shield element.  We

7  went forward at the hearing based upon a very -- just partial

8  code information we got, primarily based on the government's

9  assurances that the material we've gotten was sufficient and

10  relevant for that hearing.

11      Then Dr. Soghoian is following up on Agent Alfin's

12  testimony about how NITs works, and we get the objection, well

13  he didn't look at the code.

14      It puts us in a very difficult position.  I respectfully

15  submit this is going to get much worse at trial because

16  basically everything that they are putting in is related to

17  this computer and its security provisions and their ability to

18  indicate who was on the computer or who downloaded on this

19  computer, whose activities were on the computer.

20      So, Your Honor, I think this is actually fairly

21  straightforward because we have agreed to all their security

22  provisions.  It is obviously relevant evidence.  And unless

23  the Court has any specific additional questions about how we

24  would handle this or other concerns, I would stand again on

25  the rest of our pleadings.

1          THE COURT:  Okay.  Mr. Hampton.

2          MR. HAMPTON:  Good morning, Your Honor.  I think it

3    is important in understanding this motion that the defense

4    maintains that the evidence they seek -- the information they

5    seek is obviously relevant.  That's certainly -- if that were

6    true, we might have a different case, but I don't think it's

7    obviously relevant.

8        If we look at the pleadings we see that, from the defense

9    prospective, that identify four questions, and I think they

10   say this information is necessary.

11       So first the defense would say, well, how do we know the

12   unique identifier was unique?  We have to see who generated

13   it, because we don't know if it is unique.  If we don't know

14   it's unique, then we don't know if the information that we

15   believe is associated with Mr. Michaud, we don't know if that

16   is accurate.

17       Well, Your Honor, the government checked the database.

18   The identifier assigned to Pewter as a result of the NIT was

19   unique.  The identifiers for all the targets of the

20   investigation were unique.

21       The defense also says, well, we need to know if the NIT

22   data were accurate.  The government has provided the data that

23   we obtained as a result of the NIT, the IP address, the MAC

24   address, the other information that was stored in our database

25   and that we've received.

1    The government has provided the code, as it agreed to

2  provide, the code that generated that data, so that the

3  defense and its expert can evaluate whether in fact that code

4  could have generated the data that we have.

5    And the government has offered to provide to the defense

6  the network stream, the packet information that was

7  transferred from Mr. Michaud's computer when the NIT was

8  active, to the government controlled servers, which recorded

9  that data.

10    So if what Mr. Michaud and what the defense wishes to do

11  is to verify, as they say in their reply, that the information

12  that the government obtained as a result of the NIT and that

13  resulted in its identification of Mr. Michaud were in fact

14  accurate, the defense has the tools that they need to do that.

15    The third question that the defense asks is, well, what if

16  the government sent something else, the government sent some

17  other program and it seized some other information or

18  conducted some other searches on Mr. Michaud's computer?

19  Well, first of all, we didn't; the government didn't.  The

20  government sent the NIT.  The NIT obtained, I believe, six or

21  seven unique pieces of information pursuant to a warrant.  It

22  sent that information back to the government.  And that is the

23  information the government has disclosed to the defense.

24    But even if there is some other data that were seized, the

25  government isn't relying on that.  We haven't proffered any

1    evidence based on that.  If we did, certainly the Court could

2    and should take appropriate action; that would not be proper

3    for the government to sandbag the defense in that way.  We are

4    saying we don't have other information.  That is true and

5    accurate based on what we know at this time.  And I don't see

6    any justification for second-guessing that.

7        The fourth question, and it is related really to the third

8    question:  Well, what if someone else is responsible for the

9    child pornography on Mr. Michaud's devices?  What if someone

10   else, whether the government or some other entity, put a virus

11   on his computer or allowed that child pornography to get

12   there?  Well, again, the government didn't do that.  And if

13   someone else did, it would seem that the defense ought to be

14   able to come up with some justification for that theory in the

15   devices that are available to them, the data, the forensic

16   images of those devices, the forensic image of Mr. Michaud's

17   computer.

18       So far as I understand it, they haven't yet done their

19   full forensic investigation of that evidence.  So the defense

20   isn't saying, well, I've looked and I can't tell and here's

21   why.  They just haven't done that yet.  They rather, in fact,

22   look at the information that they say we have.

23       Now, the defense has also, I think in some ways, turned

24   this inquiry on its head.  They seem to be taking the position

25   that they are entitled to this information, we haven't shown

1    why we shouldn't give it over.  But that is actually not how

2    discovery generally works.  The defense has to demonstrate

3    some entitlement to the information, which we maintain they

4    haven't done.

5        Now, in this instance, if the Court were persuaded that

6    the defense has made some showing, the government does have

7    grave concerns about disclosing the information that is

8    requested.  And I will get to that at the end.  But we do

9    believe there would be harm and we will articulate that.

10       But as to this notion of materiality, I simply don't

11   believe that the defense has made a showing, nor does the

12   *Budziak* case change things.

13       In that case, the software program and software code that

14   was at issue was absolutely central to the issues at trial.

15   The defendant had stipulated to all the other elements of the

16   offense -- the offense was possession of child pornography --

17   and I believe all the other elements of distribution, except

18   for the distribution itself.

19       So that law enforcement software program, where the

20   undercover downloaded child pornography from the defendant in

21   that case, it was critical.  It was critical to the

22   government's proof.  It was critical to the case.  And so the

23   Ninth Circuit held that the government had to disclose more

24   information about that program, and that the district courts

25   could not simply rely on the government's assurance it didn't

1    matter.

2        Here, we have a very different case.  The information

3    obtained by NIT does not go to the core of this case.  It is

4    not required to prove the essential elements of the offenses,

5    possession of child pornography and receipt of child

6    pornography.

7        It is relevant.  I don't mean to say that it is not.  It

8    is certainly true that if there were some inaccuracy in the IP

9    address, that could present a problem.  The IP address was how

10   the government identified the defendant.  It is how it

11   obtained the search warrant in this case.  But in terms of a

12   trial, that information, the IP address, the MAC address, it

13   certainly explains why the government did what it did.  And it

14   would no doubt be part of the narrative, or could be part of

15   the narrative in the government's case, but it is not required

16   to prove the essential elements of the charges, certainly not

17   as to the possession.

18       So I don't think that the Ninth Circuit's opinion has a

19   lot of bearing on this case and how the Court should resolve

20   this particular dispute.

21       And that brings me to the final matter, which is the

22   matter of the law enforcement privilege.  And the government,

23   as the Court -- sorry, the government is aware and has, both

24   in the defense's reply and the remarks of the Court, it

25   understands the concern about the notion of an ex parte

1    in-camera hearing, and it understands why there is discomfort

2    with that.

3         It also understands that to this point the government's

4    articulation of the harm, the reason it is so deeply concerned

5    about further disclosure related to the use and deployment of

6    the NIT has been, I think, at best, circumspect.  And

7    unfortunately that is in part due to the nature of the

8    information and what the government is worried about

9    disclosing.

10        What the government is prepared to do at this time is, to

11   the extent the Court believes it would be necessary to

12   consider these issues, consider the law enforcement privilege.

13   The government does have an affidavit from a special agent

14   with the FBI and the government would propose filing that

15   under seal, if the Court will take it under seal.  The

16   government will also, rather than provide it ex parte, would

17   be willing to provide a copy to the defense subject to the

18   existing NIT protective order, and that is how we would

19   propose to proceed.

20        We would simply ask, after the Court reviews the

21   affidavit, if it concludes that it does not wish to file it

22   under seal, then the government would wish to withdraw that

23   affidavit.  It does not want it in the public record.  But

24   given that it would be produced subject to the protective

25   order, it has no problem with the defense keeping a copy.

1    So Your Honor, if I may approach.

2         THE COURT:  Wait a minute, I want to hear on that.

3         MR. FIEMAN:  Your Honor, obviously we can proceed

4    this way, we have no objection.  Really our objection is why

5    didn't we do this last week so I could come in and make an

6    informed presentation, talk to my experts.  You know, we have

7    been harping on this from the beginning --

8         THE COURT:  We are doing it now.

9         MR. FIEMAN:  Yes, thank you, Judge.

10         THE COURT:  It may be filed under seal and remain

11    under seal and under the protective order that is in place.

12         MR. HAMPTON:  Your Honor, may I approach?

13      Your Honor the defense's point is well taken.  This is not

14    an effort on the part of the government to delay

15    unnecessarily, but as I would hope the Court and the defense

16    will understand, these issues are important.  They have high

17    stakes.  And the government has been working hard speaking

18    with -- it is not simply Mr. Becker and myself who have to

19    make these decisions, but our management, and more importantly

20    management within the FBI and the law enforcement agencies who

21    care deeply about these issues.  So we are doing our best.

22         MR. FIEMAN:  Your Honor, I withdraw any objection to

23    the submission of this affidavit.

24         THE COURT:  I am sorry --

25         MR. FIEMAN:  I withdraw any objection to the

1    submission of this affidavit.

2          THE COURT:  All right.  Well, let me read it.

3       (Pause.)

4          THE COURT:  Okay.

5          MR. HAMPTON:  Unless the Court has any further

6    questions, I don't have anything further to add.

7          THE COURT:  Mr. Fieman.

8          MR. FIEMAN:  Thank you, Your Honor.  I withdrew my

9    objection because I don't see anything here that adds to what

10   we already know.

11      The discussion here is about disclosure to the public or

12   in open court.  We are not asking for that at this point.  We

13   are asking to follow the government's protective order, which

14   is extraordinarily restrictive.  I mean, we are sending one

15   expert to an FBI office to look at the code.

16      I do not see any challenge here to our expert's assessment

17   of the relevance.  It seems to be largely a restatement of the

18   government's existing position.

19      And Your Honor, I would note we appreciate the

20   government's assurances.  It is not an issue about their

21   personal integrity.  But so often, when the defense has found

22   issues, particularly in these data-driven cases that have

23   extraordinary impact, I would refer the Court to our case, the

24   Robert Lee case in front of Judge Leighton, there was

25   tremendous resistance to turning over the software there.  We

1    ended up going with a virus infection defense that resulted in

2    acquittal of five out of the six charges.  So we have some

3    experience with materiality.

4        I would note, Your Honor, we can't reverse engineer this.

5    We have consulted with all of our experts.  The one thing

6    particularly that's not discussed here is the security

7    overrides.  We know from Dr. Soghoian's testimony that

8    basically the fences were down from this malware, and we

9    cannot reverse engineer it until we know exactly what security

10   provisions were overriden, including what thumb drives may

11   have been infected.

12       So, Your Honor, starting with the presumption that

13   discovery is appropriate, is relevant, we ask the Court to

14   just pursue the protective order that is already in place.

15       Our only additional request, if you are inclined to rule

16   in our favor, Your Honor, is that we do believe this has been

17   dragged out since -- really since September when we made the

18   initial request, and we ask this be done expeditiously.

19            THE COURT:  Well, first I am satisfied that the

20   defense has shown materiality here to preparing the defense.

21   I don't need to discuss that in depth, in my view.  I think

22   the papers speak for themselves.  And it may be a blind alley,

23   but we won't know until the defense can look at the details of

24   what was done.

25       So far as the privilege is concerned, what has been

1   presented is nothing more than a showing that disclosure could

2   possibly lead to harmful consequences.  I think that is not

3   sufficient to justify a separate hearing as originally was

4   requested, and I think the affidavit filed basically says the

5   same thing that the government said in their brief on page 13,

6   that disclosure could possibly lead to a variety of harmful

7   consequences.

8       It is my opinion that the protective order in place is

9   sufficient to protect this information, and it is my judgment

10  that the motion should be granted.  The material requested

11  should be submitted, but under the terms of the protective

12  order in place.

13      If there are other additions or changes that need to be

14  made to the protective order, you can discuss that and submit

15  those things to me.  That is my ruling on this matter.

16      Now, you know, behind that ruling is this:  The government

17  hacked into a whole lot of computers on the strength of a very

18  questionable search warrant.  I ruled on the admissibility of

19  that in what I considered to be a very narrow ruling.

20      Much of the details of this information is lost on me, I

21  am afraid, the technical parts of it, but it comes down to a

22  simple thing.  You say you caught me by the use of computer

23  hacking, so how do you do it?  How do you do it?  A fair

24  question.  And the government should respond under seal and

25  under the protective order, but the government should respond

1    and say here's how we did it.

2        So, you know, I guess what I am saying is that this whole

3    thing didn't seem that complex to me.  I respect the

4    government's position in trying to keep this under wraps.  I

5    think it can be done by the protective order adequately.

6        So the defendant's third motion to compel discovery is

7    granted.  Do you have something else, Mr. Hampton?

8            MR. HAMPTON:  Your Honor, could we have just a

9    moment?  We may have a question.

10        (Pause.)

11            MR. HAMPTON:  Your Honor, in light of the Court's

12    ruling, both Mr. Becker and I will need to consult with our

13    supervision.  We will also need to consult with the FBI, as I

14    think there may be real reluctance to be able to produce any

15    of this material.

16        So I wonder if the Court could set a timeframe, perhaps in

17    two weeks, so we can report to the Court whether or not we can

18    comply with the Court's order.

19            THE COURT:  It seems to me you can either produce it

20    or move to dismiss.  You are going to have the same problem in

21    the other 130 cases, whatever you have, based on the same

22    information.

23        But I think that is a reasonable request, in light of the

24    long delay in trial that I guess we have all agreed to, a

25    couple of weeks.

1          MR. FIEMAN:  I strongly object, Your Honor.  Without

2   involving the Court in the government's settlement proposals

3   and everything, again, frankly from our perspective, this is a

4   delaying tactic to try and force Mr. Michaud to make a choice

5   on the five-year mandatory minimum on the receipt or try and

6   take some other option.  They set deadlines on that.  And

7   frankly they are trying to run out the clock on some of our

8   options.

9      I would ask the Court to just let its order stand.  We'll

10  work out the timing.  If we can't work out the timing, then we

11  would revisit.

12         THE COURT:  I am not involved in your settlement

13  negotiations.  But it seems to me that those things should

14  also be -- any artificial deadlines set by the government

15  should also be set over.

16         MR. FIEMAN:  Thank you, Your Honor.

17         THE COURT:  But they don't have to do what I suggest

18  to them in that regard.

19      There's also, of course, always a possibility of an

20  interim appeal or whatever.  But you know, do whatever you

21  think is right.

22         MR. HAMPTON:  Well, Your Honor, then I guess the

23  parties will -- the Court's order will be entered today and

24  the parties will proceed accordingly.

25         THE COURT:  I am sorry, I didn't hear that.

1        MR. HAMPTON:  Since the Court's order will be entered

2   today and the parties will proceed accordingly, we will

3   consult with our supervision and the FBI and make a decision

4   as quickly as we are able.

5        THE COURT:  Yes.  Well, you know, it is of

6   questionable propriety for me to get into settlement

7   negotiations, but it would be a damn dirty trick if the

8   government is using these discovery issues as a weapon to

9   force a decision on a plea agreement before things are

10  resolved.  So you can do what you want, I guess.

11     The motion is granted and we'll go from there.

12        MR. FIEMAN:  Thank you, Your Honor.

13        MS. SULLIVAN:  Thank you, Your Honor.

14        THE COURT:  Ordinarily, the clerk will enter a minute

15  order that I have granted the motion subject to the protective

16  order.  That is all the order that you need.

17        MR. FIEMAN:  Thank you, Your Honor.

18        MR. HAMPTON:  Thank you, Your Honor.

19     (Proceedings concluded.)

20               *   *   *   *   *
                 C E R T I F I C A T E

21
       I certify that the foregoing is a correct transcript from

22  the record of proceedings in the above-entitled matter.

23  /S/  Teri Hendrix                    February 17, 2016
    Teri Hendrix, Court Reporter              Date

24

25