# United States Court of Appeals
## For the First Circuit

No. 20-1078

UNITED STATES OF AMERICA,

Appellee,

v.

ALEX LEVIN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Thompson, Selya, and Hawkins,[*]
Circuit Judges.

Julia Pamela Heit for appellant.
Randall E. Kromm, Assistant United States Attorney, with whom Nathaniel R. Mendell, Acting United States Attorney, was on brief, for appellee.

September 14, 2021

---

[*] Of the Ninth Circuit, sitting by designation.

**HAWKINS**, <u>Circuit Judge</u>. A jury convicted Alex Levin ("Levin") of possession of child pornography involving a minor who had not yet attained twelve years of age in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). Levin was subsequently sentenced to 78 months' imprisonment to be followed by a 60-month term of supervised release. Levin now appeals, challenging the sufficiency of the evidence, the allowance of juror questions, and a jury instruction. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I. Background[1]

### A. Levin's Laptop

Levin was initially identified through a Federal Bureau of Investigation ("FBI") investigation of child pornography. <u>See</u> <u>United States</u> v. <u>Levin</u>, 874 F.3d 316, 318 (1st Cir. 2017). More specifically, the FBI received a search warrant from a district court in Virginia to install a software program, Network Investigative Technique ("NIT"), on a server, located in Virginia, for a child pornography website. <u>Id.</u> The FBI used NIT to identify and locate computers that received downloads from this child pornography website. One such computer belonged to Levin. <u>Id.</u>

---

[1] Because Levin contests the sufficiency of the evidence, we present the facts in the light most favorable to the verdict. <u>See</u> <u>United States</u> v. <u>Stefanik</u>, 674 F.3d 71, 73 (1st Cir. 2012).

Local police officers and FBI agents subsequently executed a separate search warrant for Levin's apartment, finding several electronic devices, including two laptops. FBI Special Agent Clayton Phelps ("Agent Phelps") preliminarily examined them. One of Levin's laptops stored filenames that included terms associated with child pornography, such as "pthc" (preteen hard core). Levin's devices were then transported to an FBI laboratory.

Agent Phelps proceeded to conduct a forensic review of Levin's devices, which revealed that thirteen files, containing what Levin conceded to be child pornography, were downloaded in 2011. Ten of the thirteen filenames included the term "pthc," e.g., "new pedo PTHC 6 YO 2011 friend 3 (excellent) trade only for ultraprivate."

Levin's laptop also contained two other types of files indicative of child pornography consumption. First, Agent Phelps identified the presence of "link" files with titles including terms suggestive of child pornography, such as "pedowoman" and "pedomen." Link files are created by Windows when a file is opened by a user.

Second, Agent Phelps analyzed a registry report from Levin's computer, which listed two categories of "registry" files. Registry files are generated by Windows to keep track of information on the computer so that it is easier to return to previously accessed information. The first category of registry

- 3 -

entries appeared in "\RecentDocs," which identifies the files and videos that a user has most recently opened. A number of these files had titles including terms suggestive of child pornography, such as "pedowoman" and "pthc." The second category of registry entries appeared in the "\WordWheelQuery," which identifies user searches of the computer hard drive. A number of these searches included the term: "pthc."

A federal grand jury accordingly charged Levin with possessing child pornography involving a minor who had not yet attained twelve years of age, 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).

The district court subsequently suppressed the evidence against Levin, concluding the search warrant used by the FBI to install and use NIT was invalid because it violated the geographic limitations under Federal Rule of Criminal Procedure 41. Levin, 874 F.3d at 320-21. We reversed, concluding that suppression was unwarranted under the good faith exception to the exclusionary rule, and remanded the case to the district court for further proceedings. Id. at 324.

### B. Levin's Trial

During the preliminary jury instructions, the jurors were told that they could ask questions subject to certain rules: (1) make the questions simple, (2) write them down, and (3) pass them to the forewoman, who would pass them to the judge for review.

The jurors were cautioned that the judge may not ask a question for legal reasons, so they should not make any assumptions based on un-asked questions, and the judge further reminded the jurors to focus on the testimony and not launch into their own investigations. Neither party objected to this practice or procedure.

After Agent Phelps testified, the judge told counsel for both parties, away from the jury, that he had received a list of ten juror questions and shared it with them. Most of the questions sought clarification on whether files could be accessed but not opened. The judge suggested that the defense proceed, and they would see if there was a witness "to whom those questions [could] be asked." Again, neither party objected.

At the very end of the trial, the judge allowed defense counsel to recall the defendant's forensic expert, Joseph Nicholls. Defense counsel attempted to ask a question regarding file "access," but the judge repeatedly sustained the government's objections. Eventually, the judge told the jurors that he would ask Nicholls two of their proposed questions. Once again, neither party objected. The judge asked Nicholls about "accessed" files, namely, whether a file can be accessed and not opened by a user. Nicholls responded, "yes." The judge then turned Nicholls back over to defense counsel.

- 5 -

Before closing arguments, the judge agreed to charge the jury with the definition of "knowingly" requested by defense counsel, i.e., the pattern instruction.[2] The judge proceeded to instruct the jury:

> Now to "knowingly." The law, as has been properly set forth to you, requires the government to prove that "knowingly" means that the possession here on the computer -- not any download, but the possession was voluntary and intentional, not because of mistake or accident.

Following deliberations, the jury returned a verdict finding Levin guilty of the only count charged, and he was subsequently sentenced.

## II. Discussion

### A. Sufficiency of the Evidence

We review preserved challenges to the sufficiency of the evidence de novo, viewing the record in the light most favorable to the prosecution and rejecting such challenges if any rational jury could have convicted the defendant when considering all the

---

[2] This court has made clear that "[t]hough pattern instructions may be a useful reference point, they are not binding." Teixeira v. Town of Coventry, 882 F.3d 13, 18 (1st Cir. 2018). Relevant here, the First Circuit's pattern instruction for the definition of "knowingly" is: "The word 'knowingly,' as that term has been used from time to time in these instructions, means that the act was done voluntarily and intentionally and not because of mistake or accident." See Pattern Jury Instructions for the District Courts of the First Circuit, Instruction 2.15, Definition of "Knowingly," available at https://www.med.uscourts.gov/pdf/crpjilinks.pdf, last visited Sept. 2, 2021.

evidence, direct and circumstantial, in this way. United States v. Cruz-Ramos, 987 F.3d 27, 36 (1st Cir. 2021). "[T]he issue is not whether a jury rationally could have acquitted but whether it rationally could have found guilt beyond a reasonable doubt." United States v. Breton, 740 F.3d 1, 16 (1st Cir. 2014) (quotation omitted).

Levin contends that there was insufficient evidence to prove beyond a reasonable doubt that he knew there was child pornography on his computer, focusing on the lack of direct evidence that he actually opened the files containing child pornography. We have recognized that knowledge of child pornography "often is shown through circumstantial evidence." Id. at 17 (quotation omitted). For example, a defendant's "use of search terms associated with child pornography can support a finding that the defendant knew the images he retrieved contained child pornography." Id.; see also United States v. Figueroa-Lugo, 793 F.3d 179, 187 (1st Cir. 2015); United States v. Pires, 642 F.3d 1, 9 (1st Cir. 2011). Additionally, "[t]he presence of files with names indicative of child pornography—even absent further proof of what, if anything, those files contained—tends to make it more probable that [the defendant] knowingly was involved with child pornography." Breton, 740 F.3d at 14. This is especially the case where files actually containing child pornography were found elsewhere on the same hard drive. Id.

- 7 -

Here, a reasonable jury could infer that Levin "knowingly" possessed child pornography based on the substantial amount of circumstantial evidence presented by the government: Levin personally searched his computer using terms that are associated with child pornography, e.g., "pthc." Indeed, searching "pthc" would have returned ten of the thirteen files containing child pornography on his computer. The registry report even indicated that Levin searched "pthc" more than once. And there were link files on Levin's computer with names plainly indicative of child pornography, which establishes, for example, that Levin did open and display on his screen the contents of a file titled: "Incest, set pedowoman 2010.lnk." The government's evidence was therefore sufficient to sustain a finding of guilt beyond a reasonable doubt.

### B.  Objection to Juror Questions

Where, as here, a defendant does not object to the district court's procedure for entertaining juror questions, we review for plain error. See United States v. Cassiere, 4 F.3d 1006, 1017 (1st Cir. 1993). The defendant must show: (1) error, (2) that is clear or obvious, (3) that affects his substantial rights, and (4) that seriously compromised the fairness, integrity, or public reputation of judicial proceedings. United States v. Millán-Machuca, 991 F.3d 7, 28 (1st Cir. 2021).

Levin's claim that allowing juror questions constituted plain error also fails, as he has not established any "error" that affected his substantial rights. Juror questions are allowed subject to the same rules the district court announced here. See Cassiere, 4 F.3d at 1018; see also United States v. Sutton, 970 F.2d 1001, 1005-07 (1st Cir. 1992).

Here, the judge allowed just two juror questions of Levin's own expert that related to complicated technical functions. See Sutton, 970 F.2d at 1006-07 (upholding lower court's decision to ask a few "bland" juror questions that had a "relatively high" positive value given the case's complexity). Defense counsel did not object to either of these questions. Indeed, defense counsel had earlier tried to ask the same witness similar questions. The answers to these questions were quite favorable to Levin, as they supported his theory of the case: Levin's expert answered that files can be accessed and not opened by a user. There was no plain error here.

### C. Objection to Jury Instruction

We normally review challenges to jury instructions that a defendant failed to object to below under the plain error standard. United States v. Delgado-Marrero, 744 F.3d 167, 184 (1st Cir. 2014). Here, however, Levin has not just forfeited but instead waived any objection to the district court's jury instruction on the definition of "knowingly" because, as Levin

- 9 -

acknowledges, he requested the very instruction given, i.e., the pattern jury instruction for the definition of "knowingly." See United States v. Lara, 970 F.3d 68, 75 (1st Cir. 2020); see also Figueroa-Lugo, 793 F.3d at 193 (accepting the pattern jury instruction for the definition of "knowingly").

### III.  Conclusion

We **affirm** Levin's conviction.

- 10 -